# EXHIBIT 1

# THIRD AMENDMENT

## TO THE RICHARD AND PEGGY MUSGRAVE

### DECLARATION OF TRUST DATED APRIL 3, 2002

We, Richard A. Musgrave and Peggy B. Musgrave are the Trustors and Trustees under the Richard and Peggy Musgrave Revocable Trust dated April 3, 2002. Under Article III of the Declaration of Trust, we reserved the right to amend, modify, or revoke any provision of the Declaration of Trust, or withdraw assets held under the Declaration of Trust, in whole or in part, by a written instrument signed by us and delivered to the Trustee. We hereby exercise that right, execute this Third Amendment to the Declaration of Trust, and, as Trustees, accept delivery of this Amendment. The Declaration of Trust is hereby amended as set forth below.

## AMENDMENT

FIRST:      We hereby amend Section C.2 of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

C.2      Upon the death of the survivor of us, the assets then remaining in this Bypass Trust shall be distributed as follows:

In the event Peggy B. Musgrave was the first spouse to die, the Bypass Trust shall be distributed as follows:

<u>Group I</u>

| | |
|---|---|
| PAMELA CLYNE | 18% of residual estate; |
| ROGER RICHMAN | 18% of residual estate; |
| THOMAS RICHMAN | 18% of residual estate; |
| | ——— |
| TOTAL Group I: | 54% |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

<u>Group II</u>

| | |
|---|---|
| JEFFREY ROBINSON | 6% of residual estate; |

1



| | |
|---|---|
| JENNIFER JONES | 6% of residual estate; |
| ALISON BREWER | 6% of residual estate |
| DEREK BREWER | 6% of residual estate; |
| ANA JONES | 10% of residual estate to remain in trust for the benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in meeting essential needs. When ANA reaches the age of 25, any remaining trust estate shall be distributed to her; |
| COOPER RICHMAN and PARIS RICHMAN | 12% of residual estate to remain in Trust for the benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN as Trustee, having discretion to make income and principle distributions to assist in meeting essential needs. When the youngest of COOPER and PARIS reaches the age of 25, any remaining trust estate shall be distributed to them equally, by right of representation. |

TOTAL Group II:     46%   Total 100% for Group I and II.

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

In the event Richard A. Musgrave was the first spouse to die, the Bypass Trust shall be distributed as follows:

Group III

| | |
|---|---|
| BEATE EISENFUEHR | 12% of residual estate; |
| ANGELA FEDDERSEN | 12% of residual estate; |



| DETLEV DORENDORF | 12% of residual estate; |
|---|---|
| PHILIP KRAUSE | 8% of residual estate; |
| THOMAS KRAUSE | 8% of residual estate; |
| PETER KRAUSE | 8% of residual estate; |
| HARRY KRAUSE | 20% of residual estate. |

TOTAL Group III:      80%

In the event BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF should predecease the survivor of us, his/her share shall be divided between the survivors of BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF.  In the event PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE should predecease the survivor of us, his share shall be divided between the survivor of PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE.  In the event that HARRY KRAUSE  should predecease the survivor of us, one-half of his share shall be left to EVA KRAUSE and the other half shall be divided equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE.  If EVA KRAUSE does not survive, this gift shall lapse.

Group IV

| ALZHEIMER'S DISEASE RESEARCH | 10% of residual estate; |
|---|---|
| Gateway Center Drive, P.O. Box 1950, | |
| Clarksburg, MD 20871 | |

| DOCTORS WITHOUT BORDERS USA, INC. | 10% of residual estate. |
|---|---|
| 6 East 39th Street, 8th Floor, | |
| New York, New York 10016 | |

3



TOTAL Group IV:  20%  100% Total for Group III and IV.

SECOND:  We hereby amend Section D.2B of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

D.  2B.  The net proceeds of this trust shall be distributed as follows:

In the event Peggy B. Musgrave was the last spouse to die, this Trust shall be distributed as follows:

Group I

| PAMELA CLYNE | 18% of residual estate; |
| ROGER RICHMAN | 18% of residual estate; |
| THOMAS RICHMAN | 18% of residual estate; |
| | ———— |
| TOTAL Group I: | 54% |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

Group II

| JEFFREY ROBINSON | 6% of residual estate; |
| JENNIFER JONES | 6% of residual estate; |
| ALISON BREWER | 6% of residual estate |
| DEREK BREWER | 6% of residual estate; |
| ANA JONES | 10% of residual estate to remain in trust for the benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in meeting essential needs. |

4



|  | When ANA reaches the age of 25, any remaining trust estate shall be distributed to her; |
|---|---|
| COOPER RICHMAN and PARIS RICHMAN | 12% of residual estate to remain in Trust for the benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN as Trustee, having discretion to make income and principle distributions to assist in meeting essential needs. When the youngest of COOPER and PARIS reaches the age of 25, any remaining trust estate shall be distributed to them equally, by right of representation. |
| TOTAL Group II: | 46% Total of 100% for Group I and II. |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

In the event Richard A. Musgrave was the last spouse to die, this Trust shall be distributed as follows:

Group III

| BEATE EISENFUEHR | 12% of residual estate; |
|---|---|
| ANGELA FEDDERSEN | 12% of residual estate; |
| DETLEV DORENDORF | 12% of residual estate; |
| PHILIP KRAUSE | 8% of residual estate; |
| THOMAS KRAUSE | 8% of residual estate; |
| PETER KRAUSE | 8% of residual estate; |
| HARRY KRAUSE | 20% of residual estate. |

5



TOTAL Group III:          31.5%

In the event BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF should predecease the survivor of us, his/her share shall be divided between the survivors of BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF. In the event PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE should predecease the survivor of us, his share shall be divided between the survivor of PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE. In the event that HARRY KRAUSE should predecease the survivor of us, one-half of his share shall be left to EVA KRAUSE and the other half shall be divided equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE. If EVA KRAUSE does not survive, this gift shall lapse.

Group IV

ALZHEIMER'S DISEASE RESEARCH          10% of residual estate;

Gateway Center Drive, P.O. Box 1950,

Clarksburg, MD 20871


DOCTORS WITHOUT BORDERS USA, INC.    10% of residual estate.

6 East 39th Street, 8th Floor,

New York, New York 10016


TOTAL Group IV:              20%   100% Total for Group III and IV.

6



## RATIFICATION

Except as amended above, the Declaration of Trust is hereby ratified and confirmed.

We have approved and executed this Third Amendment to the Declaration of Trust on _3/30/06_.

_Richard A. Musgrave_
Richard A. Musgrave
As Trustor and as Trustee

_Peggy B. Musgrave_
Peggy B. Musgrave
As Trustor and as Trustee

STATE OF CALIFORNIA        )

COUNTY OF SANTA CRUZ       )

On _3/30/06_ , before me, Lindsey Mena, notary public, personally appeared Richard A. Musgrave and Peggy B. Musgrave, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

LINDSEY MENA
Commission # 1480013
Notary Public - California
Santa Cruz County
My Comm. Expires Mar 30, 2008

_Lindsey Mena_
NOTARY PUBLIC

7



# SECOND AMENDMENT

## TO THE RICHARD AND PEGGY MUSGRAVE

## DECLARATION OF TRUST DATED APRIL 3, 2002

We, Richard A. Musgrave and Peggy B. Musgrave are the Trustors and Trustees under the Richard and Peggy Musgrave Revocable Trust dated April 3, 2002. Under Article III of the Declaration of Trust, we reserved the right to amend, modify, or revoke any provision of the Declaration of Trust, or withdraw assets held under the Declaration of Trust, in whole or in part, by a written instrument signed by us and delivered to the Trustee. We hereby exercise that right, execute this Second Amendment to the Declaration of Trust, and, as Trustees, accept delivery of this Amendment. The Declaration of Trust is hereby amended as set forth below.

## AMENDMENT

FIRST:          We hereby amend Section C.2 of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

C.2      Upon the death of the survivor of us, the assets then remaining in this Bypass Trust shall be distributed as follows:

Group I

| | |
|---|---|
| PAMELA CLYNE | 11% of residual estate; |
| ROGER RICHMAN | 11% of residual estate; |
| THOMAS RICHMAN | 11% of residual estate; |
| | ———— |
| TOTAL Group I: | 33% |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

Group II

| | |
|---|---|
| JEFFREY ROBINSON | 5% of residual estate; |
| JENNIFER JONES | 5% of residual estate; |

1



| | |
|---|---|
| ALISON BREWER | 4% of residual estate |
| DEREK BREWER | 4% of residual estate; |
| ANA JONES | 2.5% of residual estate to remain in trust for the benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in meeting essential needs. When ANA reaches the age of 25, any remaining trust estate shall be distributed to her; |
| COOPER RICHMAN and PARIS RICHMAN | 5% of residual estate to remain in Trust for the benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN as Trustee, having discretion to make income and principle distributions to assist in meeting essential needs. When the youngest of COOPER and PARIS reaches the age of 25, any remaining trust estate shall be distributed to them equally, by right of representation. |
| TOTAL Group II: | 25.5% |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

Group III

| | |
|---|---|
| BEATE EISENFUEHR | 5% of residual estate; |
| ANGELA FEDDERSEN | 5% of residual estate; |
| DETLEV DORENDORF | 5% of residual estate; |
| PHILIP KRAUSE | 3% of residual estate; |
| THOMAS KRAUSE | 3% of residual estate; |

2



|                    |                        |
|--------------------|------------------------|
| PETER KRAUSE       | 3% of residual estate; |
| HARRY KRAUSE       | 7.5% of residual estate. |
|                    | —— |
| TOTAL Group III:   | 31.5% |

In the event BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF should predecease the survivor of us, his/her share shall be divided between the survivors of BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF. In the event PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE should predecease the survivor of us, his share shall be divided between the survivor of PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE. In the event that HARRY KRAUSE should predecease the survivor of us, one-half of his share shall be left to EVA KRAUSE and the other half shall be divided equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE. If EVA KRAUSE does not survive, this gift shall lapse.

Group IV

|                                                                               |                        |
|-------------------------------------------------------------------------------|------------------------|
| ALZHEIMER'S DISEASE RESEARCH<br>Gateway Center Drive, P.O. Box 1950,<br>Clarksburg, MD 20871 | 5% of residual estate; |
| DOCTORS WITHOUT BORDERS USA, INC.<br>6 East 39th Street, 8th Floor,<br>New York, New York 10016 | 5% of residual estate. |
|                                                                               | —— |
| TOTAL Group IV:                                                               | 10% |

The surviving Trustor shall have a limited power of appointment to rearrange the percentage of distributions within each of Groups I, II, and III. Such limited power shall be exercised, if at all, by delivering a written notice of the exercise to the Trustee and referring to this limited power.

SECOND:   We hereby amend Section D.2B of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

3



2B.   The net proceeds of this trust shall be distributed as follows:

<u>Group I</u>

| | |
|---|---|
| PAMELA CLYNE | 11% of residual estate; |
| ROGER RICHMAN | 11% of residual estate; |
| THOMAS RICHMAN | 11% of residual estate; |
| | ———— |
| TOTAL Group I: | 33% |

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

<u>Group II</u>

| | |
|---|---|
| JEFFREY ROBINSON | 5% of residual estate; |
| JENNIFER JONES | 5% of residual estate; |
| ALISON BREWER | 4% of residual estate |
| DEREK BREWER | 4% of residual estate; |
| ANA JONES | 2.5% of residual estate to remain in trust for the benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in meeting essential needs.  When ANA reaches the age of 25, any remaining trust estate shall be distributed to her; |
| COOPER RICHMAN and PARIS RICHMAN | 5% of residual estate to remain in Trust for the benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN as Trustee, having discretion to make income and principle distributions to assist in meeting essential |

4



needs. When the youngest of COOPER and PARIS reaches the age of 25, any remaining trust estate shall be distributed to them equally, by right of representation.

---

TOTAL Group II:        25.5%

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

<u>Group III</u>

| | |
|---|---|
| BEATE EISENFUEHR | 5% of residual estate; |
| ANGELA FEDDERSEN | 5% of residual estate; |
| DETLEV DORENDORF | 5% of residual estate; |
| PHILIP KRAUSE | 3% of residual estate; |
| THOMAS KRAUSE | 3% of residual estate; |
| PETER KRAUSE | 3% of residual estate; |
| HARRY KRAUSE | 7.5% of residual estate. |

---

TOTAL Group III:       31.5%

In the event BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF should predecease the survivor of us, his/her share shall be divided between the survivors of BEATE EISENFUEHR, ANGELA FEDDERSEN, or DETLEV DORENDOF. In the event PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE should predecease the survivor of us, his share shall be divided between the survivor of PHILIP KRAUSE, THOMAS KRAUSE, or PETER KRAUSE. In the event that HARRY KRAUSE should predecease the survivor of us, one-half of his share shall be left to EVA KRAUSE and the other half shall be divided equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE. If EVA KRAUSE does not survive, this gift shall lapse.

5



Group IV

| | |
|---|---|
| ALZHEIMER'S DISEASE RESEARCH<br>Gateway Center Drive, P.O. Box 1950,<br>Clarksburg, MD 20871 | 5% of residual estate; |
| DOCTORS WITHOUT BORDERS USA, INC.<br>6 East 39th Street, 8th Floor,<br>New York, New York 10016 | 5% of residual estate. |
| | _____ |
| TOTAL Group IV: | 10% |

The surviving Trustor has the power to rearrange the percentage of distributions within each of Groups I, II and III.

## RATIFICATION

Except as amended above, the Declaration of Trust is hereby ratified and confirmed.

We have approved and executed this Second Amendment to the Declaration of Trust on _MAY 12 2004_

Richard A. Winfred
Richard A. Musgrave

Peggy B. Musgrave
Peggy B. Musgrave

6



STATE OF CALIFORNIA          )

COUNTY OF SANTA CRUZ      )

On 5/12/04 , before me, the undersigned notary public, personally appeared Richard A. Musgrave and Peggy B. Musgrave, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

LINDSEY MENA
Commission # 1480013
Notary Public - California
Santa Cruz County
My Comm. Expires Mar 30, 2008

_____
NOTARY PUBLIC

7



## FIRST AMENDMENT

## TO THE RICHARD AND PEGGY MUSGRAVE

## DECLARATION OF TRUST DATED APRIL 3, 2002

We, Richard A. Musgrave and Peggy B. Musgrave are the Trustors and Trustees under the Richard and Peggy Musgrave Revocable Trust dated April 3, 2002. Under Article III of the Declaration of Trust, we reserved the right to amend, modify, or revoke any provision of the Declaration of Trust, or withdraw assets held under the Declaration of Trust, in whole or in part, by a written instrument signed by us and delivered to the Trustee. We hereby exercise that right, execute this First Amendment to the Declaration of Trust, and, as Trustees, accept delivery of this Amendment. The Declaration of Trust is hereby amended as set forth below.

## AMENDMENT

FIRST: We hereby amend Section C.2 of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

C.       Upon the death of the survivor of us, the assets then remaining in this Bypass Trust shall be distributed as follows:

a.       PAMELA CLYNE, 10% of residual estate;

ROGER RICHMAN, 10% of residual estate;

THOMAS RICHMAN, 10% of residual estate;

JEFFREY ROBINSON, 5% of residual estate;

JENNIFER JONES 5% of residual estate;

BEATE EISENFUHR, 5% of residual estate;

DETLEV DORENDORF, 5% of residual estate;

ANGELA FEDDERSEN, 5% of residual estate;

PHILIP KRAUSE,  3.5% of residual estate;

THOMAS KRAUSE, 3.5% of residual estate;

1



PETER KRAUSE, 3.5% of residual estate;

DEREK BREWER 2.5% of residual estate; and

ALISON BREWER 2.5% of residual estate.

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

ALZHEIMER'S DISEASE RESEARCH- Research only, Gateway Center Drive, P.O. Box 1950, Clarksburg, MD 20871, 5% of residual estate to be used for Alzheimer's prevention research;

DOCTORS WITHOUT BORDERS USA, INC. 6 East 39th Street, 8th Floor, New York, 10016, 5% of residual estate.

COOPER AND PARIS RICHMAN, to remain in Trust for the educational benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN and DORIANA RICHMAN as Trustee, having discretion to make income and principle distributions to assist in their education, 7.5% of residual estate.  When the youngest of COOPER and PARIS reaches the age of 30, any remaining trust estate shall be distributed to them equally, by right of representation.

ANA JONES, to remain in trust for the educational benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in her education, 5% of residual estate.  When ANA reaches the age of 30, any remaining trust estate shall be distributed to her.

HARRY KRAUSE, 7% of residual estate;   In the event HARRY predeceases the survivor of us, his share shall be divided ½ equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE and ½ to EVA KRAUSE.  If EVA does not survive this gift shall lapse.

SECOND:     We hereby amend Section D.2B of ARTICLE 2 of the Declaration of Trust in its entirety to read as follows:

2.      The net proceeds of this trust shall be distributed as follows:

b.      PAMELA CLYNE,10% of residual estate;

2



ROGER RICHMAN, 10% of residual estate;

THOMAS RICHMAN, 10% of residual estate;

JEFFREY ROBINSON, 5% of residual estate;

JENNIFER JONES 5% of residual estate;

BEATE EISENFUHR, 5% of residual estate;

DETLEV DORENDORF, 5% of residual estate;

ANGELA FEDDERSEN, 5% of residual estate;

PHILIP KRAUSE, 3.5% of residual estate;

THOMAS KRAUSE, 3.5% of residual estate;

PETER KRAUSE, 3.5% of residual estate;

DEREK BREWER 2.5% of residual estate; and

ALISON BREWER 2.5% of residual estate.

In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

ALZHEIMER'S DISEASE RESEARCH- Research only, Gateway Center Drive, P.O. Box 1950, Clarksburg, MD 20871, 5% of residual estate to be used for Alzheimer's prevention research;

DOCTORS WITHOUT BORDERS USA, INC. 6 East 39th Street, 8th Floor, New York, 10016, 5% of residual estate.

COOPER AND PARIS RICHMAN, to remain in Trust for the educational benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor), with ROGER RICHMAN and DORIANA RICHMAN as Trustee, having discretion to make income and principle distributions to assist in their education, 7.5% of residual estate. When the youngest of COOPER and PARIS reaches the age of 30, any remaining trust estate shall be distributed to them equally, by right of representation.

3



ANA JONES, to remain in trust for the educational benefit of ANA JONES with PAMELA CLYNE and JAMES CLYNE as Trustees, having discretion to make income and principle distribution to assist in her education, 5% of residual estate. When ANA reaches the age of 30, any remaining trust estate shall be distributed to her.

HARRY KRAUSE, 7% of residual estate;   In the event HARRY predeceases the survivor of us, his share shall be divided ½ equally between PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE and ½ to EVA KRAUSE. If EVA does not survive this gift shall lapse.

### RATIFICATION

Except as amended above, the Declaration of Trust is hereby ratified and confirmed.

We have approved and executed this First Amendment to the Declaration of Trust on  _1-2 0-03_ .

Richard A. Musgrave
As Trustor and as Trustee

Peggy B. Musgrave
As Trustor and as Trustee

4



STATE OF CALIFORNIA        )

COUNTY OF SANTA CRUZ     )

On  _/ 20- 03_ before me, the undersigned notary public, personally appeared Richard A. Musgrave and Peggy B. Musgrave, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

NOTARY PUBLIC

DENNIS R. BOOK
Commission # 1251880
Notary Public - California
Santa Cruz County
My Comm. Expires Jan 29, 2004

5



# REVOCABLE LIVING TRUST

## RICHARD AND PEGGY MUSGRAVE REVOCABLE TRUST

### RICHARD A. MUSGRAVE

and

### PEGGY B. MUSGRAVE

*Prepared by*
**Dennis R. Book**
**Book & Book, LLP**
**1414 Soquel Ave., Suite 203**
**Santa Cruz, California 95062**
**831-427-5132**



# TABLE OF CONTENTS

ARTICLE ONE        NAME OF TRUST AND APPOINTMENTS . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    Name of Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    Primary Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    C.    Co-Successor Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    D.    Ability to Delegate to One Trustee . . . . . . . . . . . . . . . . . . . . . . . . . 1

    E.    Resignation of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    F.    If No Named Trustee Can Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    G.    Compensation for Successor Trustee . . . . . . . . . . . . . . . . . . . . . . . . 2

    H.    Bond Waived . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I    Accounting to Beneficiaries Required . . . . . . . . . . . . . . . . . . . . . . . 2

    J.    Primary Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3


ARTICLE TWO        PLAN OF DISTRIBUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Allocation of Assets Upon Death of One Spouse . . . . . . . . . . . . . . . 4

    B.    Marital Deduction Share . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Non-Marital Share . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    Plan of Distribution Upon Death of Survivor . . . . . . . . . . . . . . . . . 9

    E.    If All Beneficiaries Predecease . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    F.    Rule Against Perpetuities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    G.    Disinheritance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    H.    No Contest Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    Survivorship Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    J.    Simultaneous Death Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    K.    Payment of Estate Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


ARTICLE THREE    TRUSTOR POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    A.    Power to Fund the Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    B.    Power to Amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    Power to Revoke . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15



D.      Power to Change trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARTICLE FOUR        TRUSTEES POWERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
A.      Management of Trust Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

ARTICLE FIVE        GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
A.      Certificate of Trustee Authority and Power . . . . . . . . . . . . . . . . . . . . . . . . . 22
B.      Spendthrift Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
C.      Community Property Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
D.      Incapacity of Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
E.      Incapacity of the Surviving Trustor or Both Trustors . . . . . . . . . . . . . . . . . . . 23
F.      Assurances of Trustor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
G.      Liability of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
H.      Gifts Made by Trustor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
I.      Disappearance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
J.      Singular/Plural, Gender and Definitions of Common Terms . . . . . . . . . . . . . . . 24



# DECLARATION OF TRUST

This declaration of trust is made by RICHARD A. MUSGRAVE and PEGGY B. MUSGRAVE as of _April 3, 2002_. This trust shall be governed by the laws of the State of California.

### \*\*\* ARTICLE ONE \*\*\*
### NAME OF TRUST AND APPOINTMENTS

A.    **NAME OF TRUST:**

This trust shall be known as the RICHARD and PEGGY MUSGRAVE REVOCABLE TRUST.

B.    **PRIMARY TRUSTEES :**

We hereby designate ourselves as the primary trustees of this trust. As long as both of us are alive, either or both of us may exercise dominion and control over any and all of the trust assets. Upon the death of one of us, the survivor shall continue to act as the primary trustee of this living trust, with full power and authority to deal with any and all of the assets of this trust in any manner that said survivor sees fit, except as hereinafter limited as to assets placed in a secondary trust within this living trust to be known as the Bypass Trust, and except as otherwise limited under Article Two of this living trust.

C.    **CO-SUCCESSOR TRUSTEES:**

We designate HARRY KRAUSE and JAMES CLYNE as the co-successor trustees of this trust. If a co-successor trustee is unable or unwilling to act, the remaining successor trustee(s) shall serve with all rights and responsibilities originally given to all co-successor trustees. Our co-successor trustees are to assume the duties as trustees hereunder upon the resignation of both of us or the survivor of us, the death of the survivor of us, the disappearance of both of us or the survivor of us, or if both of us or the survivor of us is certified in writing to be incompetent as provided under Article Five of this Declaration of Trust. Except as otherwise specified within the provisions of this Declaration of Trust, in the event of the incompetency or resignation of both of us or the survivor of us, our co-successor trustees are to use the income and assets of this trust exclusively for the health, education, support, and maintenance of both of us or the survivor of us.

D.    **ABILITY TO DELEGATE TO ONE TRUSTEE:**

If it is impractical for all of the acting co-successor trustees to act as successor trustees, if all of the acting co-successor trustees agree in writing, they may appoint one of the successor trustees as sole successor trustee, and the successor trustee so appointed shall solely have all rights and responsibilities hereinbefore given to all named successor trustees.

1



E.   **RESIGNATION OF TRUSTEE(S):**

Any trustee may resign at any time by giving at least thirty days prior written notice, specifying the effective date of the resignation to any other trustees then serving and to the trustee appointed by this Declaration of Trust to act upon the resigning trustee's resignation.

F.   **IF NO NAMED TRUSTEE CAN ACT:**

If no trustee named in this trust is willing and able to act, a trustee or co-trustees may be selected by the majority of adult income and remainder beneficiaries named herein. The successor trustee(s) so selected and appointed shall have all rights and responsibilities hereinbefore given to the named successor trustee(s).

G.   **COMPENSATION FOR SUCCESSOR TRUSTEE(S):**

Our successor trustee(s) shall serve with reasonable compensation. If co-successor trustees act, compensation shall be divided equally between acting co-trustees, except as otherwise agreed by all co-successor trustees. If a corporate trustee serves as trustee, they shall serve with reasonable compensation in accordance with their regularly adopted fee schedule as may be in effect at the time such services are performed. Additionally, all expenses of any type incurred by our successor trustee(s) in carrying out duties under this trust shall be paid for from the trust.

H.   **BOND WAIVED:**

No bond will be required of the primary trustee(s), the successor trustee(s), bypass trust trustee(s), or any other trustee(s) named herein.

I.   **ACCOUNTING TO BENEFICIARIES REQUIRED:**

The primary trustee(s) will render such accounting to the successor trustee(s) as the primary trustee(s) deem advisable for the purpose of advising the successor trustee(s) of the nature and location of the assets of the trust. During the trustors' lifetimes, if the trustor(s) are no longer serving as primary trustees, the successor trustee(s) shall make a written accounting as hereinafter defined to the trustor(s) or to their guardians at least annually and at the time that all assets of this living trust are distributed in the event of revocation by the trustor(s). When neither trustor survives, the successor trustee(s) shall make a written accounting to all remainder beneficiaries of the net proceeds of this trust or to their guardians at least annually and at the time that all assets of this living trust are distributed. Said accounting shall consist of a record showing assets on hand at the time of the last accounting, plus additions, minus expenses and distributions, which shall equal current assets on hand. The successor trustee(s) shall not be required to obtain authority or approval of any court in the exercise of any power conferred upon the successor trustee(s), nor shall the successor trustee(s) be required to make accountings or reports to any court.



J.   **PRIMARY BENEFICIARIES:**

We hereby designate ourselves as the primary beneficiaries of this trust. As long as we or the survivor of us shall live, we or the survivor of us will have the exclusive right to the use and benefit of the income and the assets of this trust. Upon the death of the survivor of us, our successor trustee(s) shall take charge of the assets then remaining in this trust and distribute them according to the plan of distribution in Article Two of this Declaration of Trust document.



### *** ARTICLE TWO ***
### PLAN OF DISTRIBUTION

A. **ALLOCATION OF ASSETS UPON DEATH OF ONE SPOUSE**:

1. Upon the death of the first spouse, the Trustee (s) shall distribute $50,000.00 each to PAMELA CLYNE, ROGER RICHMAN, THOMAS RICHMAN and HARRY CRAUSE. In the event any of the aforementioned do not survive the first spouse to die, their gift shall lapse.

   If Peggy is the first to die, the Trustee (s) shall distribute the sum of $20,000.00, in her name, to Newnham College, Cambridge University, England, $20,000 to Derek Brewer if living and $20,000 to Alison Brewer Pizzey, if living. If Richard is the first to die, the Trustee (s) shall distribute the sum of $20,000.00 to Harvard University, to be added to the Holtzer Fellowship Fund, provided however, if this fund is not active, Harvard is directed to use the money to provide a fellowship for a German graduate student in economics.

2. The surviving trustor's share of the net proceeds of this trust shall remain in the living trust with the surviving trustor as primary trustee and primary beneficiary. Debts of decedent-trustor, debts of this trust, and expenses of the last illness and funeral expenses of the decedent-trustor shall be paid from decedent-trustor's share. After said expenses are paid, our trustee(s) shall divide the decedent-trustor's share of net proceeds of this living trust into separate shares, hereinafter referred to as the Marital Deduction Share and the Non-Marital Share. Our trustee(s) may divide community property in a non pro rata manner and shall take into account any written agreement between the trustor providing for a non pro rata division of their community property and the effect of such agreement on community property passing outside the trust. The trustee(s) shall have the discretion to select the assets to be allocated, but such assets as are selected shall be valued as hereinafter provided.

B. **MARITAL DEDUCTION SHARE**

1. The Marital Deduction Share shall be comprised of a sum equal to the smallest amount (including zero) which, when added to the value of all other property interests which pass or have passed to or for the benefit of the surviving trustor either under another provision of this living trust or in any manner outside of this living trust, and for which a federal estate tax marital deduction is finally allowed to decedent-trustor's estate, will reduce the federal estate tax to the lowest possible amount (including zero) by reason of the applicable credit amount and the state death tax credit (but only if the use of this credit does not result in increasing the state death taxes payable), but no other credit. No assets shall be allocated to this Marital Deduction Share which do not qualify for the marital deduction.

2. The trustee(s) shall allocate the assets as between the Marital Deduction Share and the Non-Marital Share in cash or in kind, or partly in each. Assets allocated in kind to satisfy this gift shall be valued at their fair market value as determined on the date or dates of distribution.

4

Book.

3.   The Marital Deduction Share shall be more particularly described as the Qualified Terminable Interest Trust (hereinafter QTIP), to be administered as follows.

   a.   The survivor of us shall be the trustee of the Qualified Terminable Interest Trust to hold in a separate trust known as the Qualified Terminable Interest Trust (QTIP Trust) to be administered pursuant to the following paragraphs. Upon the death of either of us, the plan of distribution and all terms of this QTIP Trust shall become unamendable and irrevocable.

   If the survivor of us is unable or unwilling to act as trustee, then HARRY KRAUSE and JAMES CLYNE shall act with all rights and responsibilities given to the original trustee. If a co-trustee is unable or unwilling to act, the remaining trustee(s) shall serve with like power.

   b.   During the surviving spouse's lifetime, the trustee(s) shall pay to or for the benefit of the surviving spouse the Qualified Terminable Interest Trust income arising from the trust estate in convenient installments, but not less frequently than annually.

   However, if the trust is named as beneficiary of any individual retirement account, Roth IRA, qualified retirement plan, or similar tax-favored retirement arrangement or annuity under §401(a)(9) of the Code or other Code provisions or applicable law (referred to as the 'Plan'), the trustee(s) must withdraw from the Plan, and deposit in this trust, at least whichever of the following amounts to the greater 1) the income earned on assets held in said Plan during the calendar year, or 2) the 'minimum distribution amount' which is required to be withdrawn from such Plan under §401(a)(9) of the Code or other Code provisions or applicable law. In this event, during my spouse's lifetime, the trustee(s) shall pay to or for the benefit of my spouse the greater of the minimum distribution which is required to be withdrawn from said Plan or an amount equal to the income earned by my account in said Plan, regardless of whether such amount is allocated to corpus or income under applicable state law or the terms of this trust, along with all other Qualified Terminable Interest Trust income arising from the trust estate in convenient installments, but not less frequently than annually.

   The Trustee (s) may distribute to the Surviving Spouse at any time during his or her lifetime that amount from trust principal, up to the whole trust estate, as the Trustee (s) may determine to be reasonably necessary for the Surviving Spouse's health, education, maintenance, and support. The Trustee (s) shall exercise this discretion in a liberal manner, and the rights of remainder beneficiaries shall be of secondary importance. In exercising this discretion, the Trustee (s) shall take into consideration other income and property available to the Surviving Spouse. No person shall have the power to appoint or distribute any part of the trust property held in the QTIP Trust to any person other than the Surviving Spouse.



c.      Upon the surviving spouse's death, any accrued and undistributed income shall be distributed to the surviving spouse's estate, after provision has first been made for the payment of any estate, inheritance, transfer, succession or other death taxes payable by reason of the inclusion of the value of the trust property in the surviving spouse's estate. The remaining principal shall be added to and become part of the Bypass Trust and shall be held and administered and disposed of in accordance with the plan of distribution for the Bypass Trust as herein provided, or, if no Bypass Trust exists, remaining principal shall be distributed pursuant to the plan of distribution for the Non-Marital Share as herein provided, which plan is herein incorporated by reference.

d.      If no executor, personal representative or administrator is appointed, qualified and acting in the United States in regard to decedent-spouse's estate, the trustee(s) of the revocable trust or others authorized pursuant to I.R.C. §2056 (b) (7) (hereinafter referred to as '706 Filer') are hereby authorized, in the 706 Filer's sole discretion, to determine whether to elect (under I.R.C. §2056(b)(7)) to qualify all or a specific portion of the Qualified Terminable Interest Trust created herein for the federal estate tax marital deduction. The 706 Filer, in exercising such discretion, shall attempt to minimize, or eliminate if possible, the federal estate tax payable by the decedent-spouse's estate at the time of death.

If, however, the 706 Filer determines that it is in the best interest of the persons who may receive any assets after the death of both trustors to pay some federal estate tax in the decedent-spouse's estate, taking into consideration any other tax that is to be paid because of the death of both trustors, and any income tax liability that may be affected by the election, the 706 Filer may elect to take a marital deduction that does not reduce the tax to zero if the payment of the tax will not jeopardize the ability of the Qualified Terminable Interest Trust to provide the surviving spouse with the level of support and maintenance contemplated by this Declaration of Trust. The decision of the 706 Filer to make this election shall be final and binding on all persons.

e.      If an election is made under I.R.C. §2056(b)(7) to qualify some but not all of the property allocated to the QTIP Trust for the federal estate tax marital deduction, the QTIP Trust shall be divided into two separate trusts pursuant to the terms of the election. The division shall be based on the fair market value of the trust assets at the time of the division, and shall be done on a fractional or percentage basis pursuant to Reg. §20.2056(b)-7(b)(2)(ii). One of the trusts shall contain the share of the trust assets for which the election has been made and shall be designated as the Qualifying QTIP Trust. The other trust shall contain the share of the trust assets for which the election has not been made and shall be designated the Non-Qualifying QTIP Trust. The Non-Qualifying QTIP Trust shall be subject to all of the rights, interests, powers, and other terms prescribed for the Qualifying QTIP Trust.



f.     We authorize and empower the Qualified Terminable Interest Trust trustee(s) to invest, reinvest, transfer, and convey any and all property held in this Qualified Terminable Interest Trust. This includes all power now or hereafter conferred upon trustee(s) by applicable state law, and also those powers appropriate to the orderly and effective administration of the trust.

g.     The Qualified Terminable Interest trustee(s) shall act without bond and shall make a written accounting to the surviving spouse at least annually, and shall make a written accounting to all remainder beneficiaries at the time that all assets of this Qualified Terminable Interest Trust are distributed. Said accounting shall consist of a record showing assets on hand at the time of the last accounting, plus additions, minus expenses and distributions, which shall equal current assets on hand. The Qualified Terminable Interest trustee(s) shall not be required to obtain authority or approval of any court in the exercise of any power conferred upon the trustee(s), nor shall said trustees be required to make accountings or reportings to any court.

h.     The trustee(s) shall serve with reasonable compensation. If co-trustees act, compensation shall be divided equally between acting co-trustees, except as otherwise agreed by all co-trustees. If a corporate trustee serves as trustee, they shall serve with reasonable compensation in accordance with their regularly adopted fee schedule as may be in effect at the time such services are performed. Additionally, all expenses of any type incurred by the trustee(s) in carrying out duties under this trust shall be paid for from the trust.

## C.     **NON-MARITAL SHARE**

1.     The Non-Marital Share shall be comprised of the net proceeds of the trust remaining after compliance with the above provisions, and shall be distributed to a Bypass Trust, to be held and administered as follows:

a.     The survivor of us shall be the trustee of the Bypass Trust and, during the surviving trustor's lifetime, this trust shall be administered for the benefit of the surviving spouse as hereinafter provided. Upon the death of either of us, the plan of distribution and all terms of this Bypass Trust shall become unamendable and irrevocable. The trustee shall pay to or use for the benefit of the surviving trustor so much of the net income and principal of the Bypass Trust as the trustee shall deem necessary for the health, education, maintenance, or support of the surviving trustor, taking into consideration all other means available to the surviving trustor for such purposes from all sources known to our trustee.

b.     If the survivor of us is unable or unwilling to act as trustee, then HARRY KRAUSE and JAMES CLYNE shall act with all rights and responsibilities given to the original trustee. If a co-trustee unable or unwilling to act, the remaining trustee(s) shall serve with like power.



c.   We authorize and empower our Bypass Trust trustee(s) to invest, reinvest, transfer, and convey any and all property held in this Bypass Trust. This includes all power now or hereafter conferred upon trustee(s) by applicable state law, and also those powers appropriate to the orderly and effective administration of the trust.

d.   The Bypass Trust trustee(s) shall act without bond and shall make a written accounting to the surviving trustor at least annually, and shall make a written accounting to all remainder beneficiaries of the net proceeds of this trust at the time that all assets of this Bypass Trust are distributed. Said accounting shall consist of a record showing assets on hand at the time of the last accounting, plus additions, minus expenses and distributions, which shall equal current assets on hand. The Bypass Trust trustee(s) shall not be required to obtain authority or approval of any court in the exercise of any power conferred upon the trustee(s), nor shall said trustee(s) be required to make accountings or reportings to any court.

e.   The trustee(s) shall serve with reasonable compensation. If co-trustees act, compensation shall be divided equally between acting co-trustees, except as otherwise agreed by all co-trustees. If a corporate trustee serves as trustee, they shall serve with reasonable compensation in accordance with their regularly adopted fee schedule as may be in effect at the time such services are performed. Additionally, all expenses of any type incurred by the trustee(s) in carrying out duties under this trust shall be paid for from the trust.

2.   Upon the death of the survivor of us, the assets then remaining in this Bypass Trust shall be distributed as follows:

a.   PAMELA CLYNE, 8% of residual estate;

ROGER RICHMAN, 8% of residual estate;

THOMAS RICHMAN, 8% of residual estate;

JEFFREY ROBINSON, 4% of residual estate;

JENNIFER JONES, 4% of residual estate;

BEATE EISENFUHR, 5% of residual estate;

DETLEV DORENDORF, 5% of residual estate;

ANGELA FEDDERSEN, 5% of residual estate;

PHILIP KRAUSE, 4% of residual estate;

THOMAS KRAUSE, 4% of residual estate;



PETER KRAUSE, 4% of residual estate;
> In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

ANA COOPER, 3% of residual estate;
> In the event ANA predeceases the survivor of us, her share shall be distributed to Jennifer Jones. If Jennifer does not survive, this gift shall lapse.

HARRY KRAUSE, 12% of residual estate;
> In the event HARRY predeceases the survivor of us, his share hall be divided ½ equally to the survivor of PHILIP KRAUSE, THOMAS KRAUSE and PETER KRAUSE and ½ to EVA KRAUSE. If EVA does not survive, this gift shall lapse.

TO A FEDERALLY TAX EXEMPT ORGANIZATION, to be selected by the trustee (s), for the purpose of conducting research into the causes and cure of Alzheimer's disease, 7%;

THE ORGANIZATION KNOWN AS DOCTORS WITHOUT BORDERS, 7%;

NATURE CONSERVANCY, 4%;

To remain in trust for the educational benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor) with Roger Richman as trustee, having discretion to make income and principal distributions to them to assist in their education, 8% of residual estate. When the youngest of COOPER and PARIS reaches the age of 30, any remaining trust estate shall be distributed to them equally, by right of representation

D. **PLAN OF DISTRIBUTION UPON DEATH OF SURVIVOR:**

1. Upon the death of the survivor of us, our successor trustee(s) shall take charge of the assets then remaining in this trust, pay all of the legally enforceable debts of the survivor of us including the expenses of the last illness and funeral expenses of the survivor of us, current bills and any and all other expenses incurred in closing out this trust and making distribution of assets thereof, except the trustee(s) shall be prohibited from using qualified plans, individual retirement plans, deferred compensation plans under §457 and §403(b) annuity contracts, custodial accounts and/or retirement income accounts to pay said taxes, debts or expenses.

If Peggy is the second to die, the Trustee (s) shall distribute the sum of $20,000.00, in her name, to Newnham College, Cambridge University, England. If Richard is the second die, the Trustee (s) shall distribute the sum of $20,000.00 to Harvard University, to be added to the Holtzer Fellowship Fund, provided however, if this fund is not active, Harvard is directed to use the money to provide a fellowship for

9



a German graduate student in economics.

2.   Proceeds remaining after the previous provisions have been complied with shall be distributed according to the following plan of distribution:

a.   We direct that our successor trustee(s) distribute our personal effects, including automobiles, boats, sporting equipment, jewelry, furniture, furnishings, china, glassware, silver and household equipment to the family and friends of both trustors, who have an interest in such property, and to the extent possible, to those members of the family to whom such personalty belonged. Any decision of the Trustee (s) shall be final.

b.   The net proceeds of this trust shall be distributed as follows:

PAMELA CLYNE, 8% of residual estate;

ROGER RICHMAN, 8% of residual estate;

THOMAS RICHMAN, 8% of residual estate;

JEFFREY ROBINSON, 4% of residual estate;

JENNIFER JONES, 4% of residual estate;

BEATE EISENFUHR, 5% of residual estate;

DETLEV DORENDORF, 5% of residual estate;

ANGELA FEDDERSEN, 5% of residual estate;

PHILIP KRAUSE, 4% of residual estate;

THOMAS KRAUSE, 4% of residual estate;

PETER KRAUSE, 4% of residual estate;

> In the event a beneficiary named above should predecease the survivor of us, their share shall be prorated among the remainder of such named beneficiaries.

ANA JONES, 3% of residual estate;
> In the event ANA predeceases the survivor of us, her share shall be distributed to Jennifer Jones. If Jennifer does not survive, this gift shall lapse.

HARRY KRAUSE, 12% of residual estate;
> In the event HARRY predeceases the survivor of us, his share hall be divided ½ equally to the survivor of PHILIP KRAUSE, THOMAS

10



KRAUSE and PETER KRAUSE and ½ to EVA KRUASE. If EVA does not survive, this gift shall lapse.

TO A FEDERALLY TAX EXEMPT ORGANIZATION, to be  selected by the trustee (s), for the purpose of conducting research into the causes and cure of Alzheimer's disease, 9%;.

THE ORGANIZATION KNOWN AS DOCTORS WITHOUT BORDERS, 5%;

NATURE CONSERVANCY, 4%;

To remain in trust for the educational benefit of COOPER RICHMAN and PARIS RICHMAN (or the survivor) with Roger Richman as trustee, having discretion to make income and principal distributions to them to assist in their education, 8% of residual estate.  When the youngest of COOPER and PARIS reaches the age of 30, any remaining trust estate shall be distributed to them equally, by right of representation

E.     **IF ALL BENEFICIARIES PREDECEASE:**

Upon the death of the survivor of us, if neither beneficiaries nor alternate beneficiaries named herein survive, then we give the net proceeds of this trust fifty percent (50%) to the heirs at law of trustor-husband and fifty percent (50%) to the heirs at law of trustor-wife of this living trust.

F.     **RULE AGAINST PERPETUITIES**:

All trusts created by this instrument or by the exercise of any power of appointment shall terminate within ninety (90) years after its' creation, pursuant to California Probate Code §21200-21231 and shall include any amendments and/or equivalent successor section to said code or regulation.  The trustee shall distribute the principal and undistributed income of a terminated trust to the then-living income beneficiaries of that trust in the same proportion that the beneficiaries are entitled to receive income when the trust terminates.  At the time of such termination, if the trust does not fix the rights to income, the trustee shall distribute the trust by right of representation to the persons, who, in the trustee's reasonable discretion, are entitled to receive trust payments.

G.     **DISINHERITANCE:**

We have intentionally and with full knowledge omitted to provide for all of our heirs who are not specifically mentioned in the terms of this trust agreement.

H.     **NO CONTEST CLAUSE:**

If any beneficiary of this trust or any trust created under this trust, singly or in conjunction with any other person:

11



1.   contests or otherwise objects in any court to the validity of any of the following documents or amendments thereto (hereafter "Document" or "Documents") or of any of their provisions:

   a.   this trust,

   b.   the Survivor's Trust,

   c.   the Bypass Trust,

   d.   the Marital Trust, or

   e.   any other trust created pursuant to this trust,

   f.   either Trustor's Will,

   g.   any beneficiary designation of an annuity, retirement plan, IRA, Keogh, pension or profit-sharing plan or insurance policy signed by either Trustor,

   h.   a buy-sell agreement signed by either Trustor,

   i.   a family partnership agreement, limited liability company, or related operating agreement signed or established by either Trustor; or

2.   seeks to obtain an adjudication in any court proceeding that a Document is void, or otherwise seeks to void, nullify or set aside a Document (or any of its provisions);

3.   files suit on a creditor's claim filed in a probate of either Trustor's estate against the trust estate, or any other Document, after rejection or lack of action by the respective fiduciary;

4.   files a petition or other pleading to change the character (community, separate, joint tenancy, partnership, domestic partnership) of property already characterized by a Document;

5.   claims ownership to any asset held in joint tenancy by either Trustor, other than as a surviving joint tenant;

6.   files a petition to determine domestic partnership property for cohabitants relating to either Trustor;

7.   files a petition of probate homestead in a probate proceeding of either Trustor's estate;

8.   files a petition for family allowance in a probate of either Trustor's estate; or

9.   participates in any of the above actions in a manner adverse to the trust estate, such as conspiring with or assisting any person who takes any of the above actions,



then the right of such beneficiary to take any interest given to him or her under this trust or any trust created pursuant to this trust shall be determined as it would have been determined had such beneficiary predeceased the Trustors without surviving issue.

The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other violation of this paragraph. Notwithstanding the foregoing, a "contest" shall include any action described above in an arbitration proceeding and shall *not* include any action described above solely in a mediation not preceded by the filing of a contest with the court.

Notwithstanding the foregoing, this paragraph shall not apply so as to cause a forfeiture of any distribution otherwise qualifying for the federal estate tax marital deduction or charitable deduction.

I.   **SURVIVORSHIP CLAUSE:**

Any person who does not survive the survivor of us by thirty (30) days shall be deemed not to have survived for purposes of distribution under this trust.

J.   **SIMULTANEOUS DEATH PROVISION:**

If we should die under such circumstances as would render it doubtful as to which of us died first, then it shall be conclusively presumed for the purposes of this living trust that we died simultaneously.

K.   **PAYMENT OF ESTATE TAXES**

Except as otherwise expressly provided, Estate taxes imposed on property includible in the deceased Trustor's gross taxable estate shall be equitably prorated and apportioned among, charged to, and paid by the persons who receive the property subject to the Estate taxes (including the separate trust estates of the trusts created under this Declaration of Trust), as provided in Probate Code §§20100 through 20225 and the applicable provisions of the I.R.C. In accordance with Probate Code §20100(e), the proration shall be based on the federal estate tax value of the property.



## \*\*\* ARTICLE THREE \*\*\*
## TRUSTOR POWERS

A.  **POWER TO FUND THE TRUST:**

After this trust is duly executed, we will execute and deliver all deeds, assignments, bills of sale, written instructions and other legal documents necessary to convey and register all of our assets that we choose to place in trust under this trust to be owned by the trustee(s) of this trust and held and administered under the terms and conditions of this trust. Assets which are evidenced by titles or deeds currently being transferred to the trustee(s) of this trust are listed on Schedule A, which is attached to this trust and made a part of this trust. We hereby transfer to this trust all assets not requiring titles or deeds, including but not limited to our furniture, wearing apparel, and personal possessions. Additionally, the trustor(s) are now holding and will hold, solely and exclusively for and on behalf of such trust, any and all properties of all kinds, whether presently owned or hereafter acquired including, bank accounts, certificates of deposit, mutual and money market funds of all kinds, securities, agency and custody accounts, notes, and real estate wherever located, but not including tax-favored assets on which recognition of income has been deferred including but not limited to IRAs, Roth IRAs, qualified plans under IRC §401(a), tax sheltered annuities, and non-qualified deferred compensation.

All such property is hereby transferred to and the same shall be owned by such trust.

This declaration shall apply even though record ownership or title, in some instances, may, presently or in the future, be registered in the individual name or names of either of us, in which event such record ownership shall hereafter be deemed held in trust even though such trusteeship remains undisclosed.

All assets transferred to the trustee(s) of this trust, whether now or at a later date, shall become part of the trust estate and be subject to all terms and provisions of this trust document.

B.  **POWER TO AMEND:**

During our joint lifetimes this trust may be amended in whole or in part by an instrument in writing which is either notarized or executed with the same formalities as a will, signed by both trustors, and delivered to all acting trustee(s) (who may be trustor(s)), except as may be limited by Article One or Two of this Declaration of Trust.

After the death of the first trustor to die, the surviving trustor may amend the trust, in whole or in part, by an instrument in writing, signed by the surviving trustor and delivered to all acting trustee(s) (which may be the surviving trustor) except as may be limited by Article One or Two of this Declaration of Trust.

C.  **POWER TO REVOKE:**

During our joint lifetimes, we may revoke the trust with regard to our community property by an instrument in writing, signed by at least one of us and delivered to the other trustor and all acting trustee(s) (who may be trustor(s)), except as may be limited by Article One or Two

14



of this Declaration of Trust. Upon revocation, the trustee(s) shall deliver the community property or the revoked portion of the community property to both of us. All community property delivered to us on revocation shall continue to be our community property.

With respect to the separate property of either of us, either of us may revoke the trust as to his or her separate property, except as may be limited by Article One or Two of this Declaration of Trust. Upon revocation, the trustee(s) shall deliver the separate property or the revoked portion of the separate property to the trustor who transferred the separate property into the trust. All separate property delivered to one trustor shall continue to be the separate property of the trustor whose separate property it was while in the trust.

After the death of the first of us, the surviving trustor may revoke the trust, in whole or in part, by an instrument in writing, signed by the surviving trustor and delivered to all acting trustee(s) (which may be the surviving trustor) except as may be limited by Article One or Two of this Declaration of Trust. Upon revocation, the trustee(s) shall deliver the trust property to the surviving trustor.

D.    **POWER TO CHANGE TRUSTEE:**

During our joint lifetimes, we may change the trustee(s) of this trust by an instrument in writing, signed by at least one of us and delivered to the other trustor and all acting trustee(s) (who may be trustor(s)), except as may be limited by Article One or Two of this Declaration of Trust.

After the death of the first trustor to die, the surviving trustor shall have the power to change the trustee(s) by an instrument in writing, signed by the surviving trustor and delivered to all acting trustee(s) (which may be the surviving trustor) except as may be limited by Article One or Two of this Declaration of Trust.



### *** ARTICLE FOUR ***
### TRUSTEE(S)' POWERS

A.  **MANAGEMENT OF TRUST PROPERTY:**

With respect to property governed by any trust created under this agreement, except as otherwise specifically provided in this trust, the trustee(s) shall have all the rights, powers and authority to deal with and manage the assets of this trust that an individual owner would have if there was no trust and the trustee(s) were acting as legally competent individual(s) dealing with their own property. This includes, but is by no means limited to the right to borrow against or pledge any of the trust assets, including the right to mortgage real estate and margin stocks or other securities owned by the trustee(s) of the trust. This includes all powers now or hereafter conferred upon trustee(s) by applicable state law, and also those powers appropriate to the orderly and effective administration of the trust. Any expenditure involved in the exercise of the trustee(s)' powers shall be borne by the trust.

Trustee(s)' powers shall include, but shall not be limited to, the following powers:

1.  To sell, convey, pledge, mortgage, lease, manage, operate, control, transfer title, divide, convert or allot the trust property, including real and personal property, and to sell upon deferred payments; to lease for terms within or extending beyond the duration of the trust for any purpose; to enter into covenants and agreements relating to the property so leased or any improvements which may be erected on such property.

2.  To abandon or retain underproductive or nonproductive assets, and to invest and reinvest the trust funds in such property as the trustee(s), in the exercise of reasonable business judgment, may deem advisable, including stock of the trustee(s) and investments in any common trust fund now or hereafter established by trustee(s), except in regard to marital deduction property, in which case the surviving spouse shall have the power to direct the trustee(s) to make the property income producing.

3.  To deal with itself or affiliates, to borrow money for any purpose; to place, replace, renew or extend any encumbrance upon any trust property by mortgage, deed of trust, pledge or otherwise, regardless of the purpose of any such action.

4.  To establish lines of credit and to guarantee any and all loans made to the trustor(s) regardless of the purpose of the loan.

5.  To participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers and liquidations and, in connection therewith, to deposit securities with and transfer title and all rights and responsibilities to any protective or other committee as the trustee(s) may deem advisable.

6.  To acquire or dispose of an asset for cash or on credit, at public or private sale, and to exchange, partition, change the character of or abandon a trust asset or any interest herein.



7.     To make improvements, alterations, or ordinary or extraordinary repairs of buildings or other trust property; to demolish any improvements; and to raze existing or erect new party walls or buildings.

8.     To subdivide, develop or dedicate land to public use; to make or obtain the vacation of plats and adjust boundaries; to adjust differences in valuation on exchange or partition by giving or receiving consideration; to dedicate easements for public use without consideration; and to create restrictions, easements or other servitudes.

9.     To grant an option involving disposition of a trust asset, or to take an option for the acquisition of any asset.

10.    To vote a security, in person or by general or limited proxy.

11.    To pay calls, assessments and any other sums chargeable or accruing against or on account of securities.

12.    To sell or to exercise or not exercise, as the trustee(s) may deem advisable, any subscription, conversion or other rights or options which may at any time attach to, belong to or be given to the holders of any stocks, bonds, securities or other instruments in the trust estate.

13.    To engage in covered call writing.

14.    To buy, sell and trade in securities of any nature.

15.    To hold a security in the name of a nominee or in any other form without disclosure of the trust, so that title to the security may pass by delivery, but the trustee(s) shall be liable for any act of the nominee in connection with the security so held.

16.    To insure the assets of the trust against damage or loss, and the trustee(s) against liability with respect to third persons.

17.    To advance money for the protection of the trust and for all expenses, losses and liabilities sustained in the administration of the trust or because of the holding or ownership of any trust assets.  Thereon, the trustee(s) shall have a lien on the trust assets for any such advances.

18.    To pay or contest any claim; to settle a claim by or against the trust by compromise, arbitration or otherwise; to release, in whole or in part, any claim belonging to the trust to the extent that the claim is uncollectible; and to institute, compromise and defend actions and proceedings.

19.    To commence or defend litigation with respect to the trust or any property of the trust estate as trustee(s) may deem advisable and to employ such counsel as the trustee(s) shall deem advisable for that purpose.



20.   To enforce any mortgage, deed of trust or pledge and, at any sale under any mortgage, deed of trust or pledge, to bid and purchase, at the expense of the trust, any property subject to any such security instrument.

21.   To pay taxes, assessments, any compensation of trustee(s) as allowed under other provisions of this Declaration of Trust and other reasonable expenses incurred in the collection, care, administration and protection of the trust.

22.   To continue or participate in any business or other enterprise and to effect incorporation, dissolution or other change in the form of organization of the business or enterprise.

23.   To pay the debts of trustor(s), the cost of any final illnesses of trustor(s), and the cost of trustor(s)' funerals and final disposition, and to authorize any actions necessary to arrange for trustor(s)' funerals and final disposition.

24.   To appoint a general or special agent to act on trustee(s)' behalf. Any power of attorney the trustee(s) create pursuant to this power shall cease when the appointing trustee(s) cease to act as trustee(s).

25.   After the death of either trustor, upon any division or partial or final distribution of the trust estate, the trustee(s) shall have the power to partition, allot and distribute the trust estate in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the trustee(s), and to sell such property as the trustee(s) consider necessary to make such division or distribution. The trustee(s) may make non pro rata divisions between beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value.

26.   The trustee(s) shall have the power to deal with governmental agencies; to make applications for, receive and administer any of the following benefits, if applicable: Social Security, Medicare, MediCal, Supplemental Security Income, and any other government resources and community support services available. The trustee(s) shall have the power to explore and implement legally acceptable MediCal planning strategies and options to plan and accomplish asset preservation if a trustor needs long-term health and nursing care.

27.   If the estate of either trustor is probated and the estate(s) do not contain sufficient funds with which to pay legally enforceable debts and expenses, the executor(s) of the respective estate shall have the right to request that the trustee(s) of this trust distribute to the estate(s) an amount necessary to satisfy the legally enforceable debts and expenses, and the trustee(s) are authorized, in the sole discretion of the trustee(s), to distribute funds to the estate for said debts and expenses, except that the trustee(s) shall make no payment from assets, such as life insurance proceeds, that would otherwise be immune from creditors' claims.

28.   Property passing to the trustee(s) of any trust under this agreement may be disclaimed by said trustee(s) without court order or approval of beneficiaries, and the trustee(s) shall recognize a beneficiary's disclaimer of all or any part of said beneficiary's

18



interest in any property distributable to the beneficiary, provided the disclaimer is made in accordance with the requirements for a disclaimer pursuant to I.R.C. § 2518.

29.   The trustee(s) shall have the power to permit any beneficiary to use any tangible personal property held as an asset of a trust without incurring liability to the trustee(s) or the beneficiary(ies) for damage to, or consumption or loss of, such property.

30.   The trustee(s) are authorized to divide any trust, whether existing or to be established, into two or more separate smaller trusts, without any requirement for said trusts to be equal in value, and without any requirement for discretionary distributions to be made proportionally among said trusts, whenever the trustee(s) believe such division may achieve desirable tax results for the trust or its beneficiaries, promote easier administration or otherwise be in the best interests of the trust or its beneficiaries. Upon termination of any separate smaller trust, the trustee(s) are authorized to distribute from any one such trust to any beneficiary in proportions/amounts as the trustee(s) consider desirable so long as distribution from all such separate smaller trusts would, if such trusts were a single trust, satisfy the provisions governing the trust before its division.

31.   The trustee(s) may appoint one or more outside investment managers to provide discretionary investment management of all or part of the trust's property, and may delegate investment authority to such managers with respect to the trust property committed to manager's discretion.   The trustee(s) may compensate any such investment manager for its services without reduction of the trustee(s)' compensation. Any such delegation shall be evidenced by an investment advisory agreement or similar document.

32.   In the event any corporate trustee(s) shall merge, consolidate with, sell, or transfer substantially all of its business assets to another corporation, state or federal, the corporation resulting from such merger or consolidation of the corporation to which it is converted or to which such sale or transfer shall be made, shall hereupon become the trustee(s) hereunder with the same effect as though originally named.

33.   Any expense incurred by the trustee(s) under this Article may be charged against income or principal as the trustee(s) shall determine in a fair and equitable manner to the extent the allocation is not covered by statute.

34.   The trustee(s) are authorized, in the trustee(s)' absolute discretion, with respect to environmental issues that may arise with respect to any property, real or personal, at any time held under any provision of this trust agreement and without authorization by any court and in addition to any other rights, powers, authority and privileges granted by any other provision of this trust agreement or by statute or general rules of law:

a.   To use or expend the trust income and principal to (1) conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulations thereunder; (2) take all appropriate remedial action to contain, cleanup or remove any environmental hazard including a spill, release, discharge or contamination, either on its own accord or in

19



response to regulations thereunder; (3) defend, settle, or act upon legal proceedings brought about by any local, state, federal or foreign agency concerned with environmental law or regulations thereunder; (4) comply with any local, state or federal agency order or court order directing an assessment, abatement or cleanup of any environmental hazards; and (5) employ agents, consultants and legal counsel to assist or perform the above undertakings or actions.

b.    To disclaim, in whole or in part, any interest in property for any reason, including but not limited to a concern that such property could cause potential liability under any federal, state, local or foreign environmental law.

c.    The trustee(s) shall not be liable for any loss or depreciation in value sustained by the trust as a result of the trustee(s) retaining any property upon which there is later discovered to be hazardous materials or substances requiring action pursuant to any federal, state, local or foreign environmental law, unless the trustee(s) contributed to the loss or depreciation in value through willful default, willful misconduct or gross negligence.

d.    Notwithstanding any provision in this trust agreement to the contrary, the trustee(s) may withhold a distribution to a beneficiary until receiving from the beneficiary an indemnification agreement in which the beneficiary agrees to indemnify the trustee(s) against any claims filed against the trustee(s) as "owner" or "operator" under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 as subsequently amended from time to time or against any regulation thereof.

35.    Broad Investment Powers Under Prudent Investor Rules

The trustee(s) may, in the trustee(s) discretion, invest and reinvest trust funds in every kind of property (real, personal, or mixed) and every kind of investment, specifically including but not limited to corporate obligations of every kind, (preferred or common stocks, shares of investment trusts, investment companies, and mutual funds), life insurance policies, notes, real estate, bonds, debentures, mortgages, deeds of trust, mortgage participations, market funds and index funds appropriate under the then prevailing circumstances (specifically including but not limited to the factors set out in Probate Code section 16047(c)):

a.    General economic conditions.

b.    The possible effects of inflation or deflation.

c.    The expected tax consequences of investment decisions or strategies.

d.    The role that each investment or course of actions plays within the overall trust portfolio.

e.    The expected total return from income and the appreciation of capital.

20



f.      Other resources of beneficiaries known to the trustee(s) or determined from information provided by the beneficiaries.

g.      Needs for liquidity, regularity of income, and preservation or appreciation of capital.

h.      An asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries.

In doing so, the trustee(s) shall exercise care, skill, and caution to attain the trustor(s)' goals under this instrument, including retention of rental real estate owned by this living trust. The trustee(s) shall consider individual investments as part of an overall investment strategy having risk and return objectives reasonably suited to the purposes of the trust. The trustee(s)' investments may include stock in any common trust fund administered by a corporate trustee.

36.     The trustee(s) shall administer the trust in accordance with the California Uniform Principal and Income Act of California; Probate Sections 16320-16375.



### *** ARTICLE FIVE ***
### GENERAL PROVISIONS

A.   **CERTIFICATE OF TRUSTEE AUTHORITY AND POWER:**

A Certificate of Trustee Authority and Power signed by a majority of the serving trustee(s) of this trust and acknowledged before a notary public shall be conclusive evidence upon all persons and institutions and for all purposes of the facts stated in said Certificate respecting the terms of the trust, the text of the trust, and regarding who are from time to time trustee(s) of the trust.

B.   **SPENDTHRIFT PROVISION:**

No interest in the principal or income of any trust created under this trust instrument shall be anticipated, assigned, encumbered or subjected to creditors' claims or legal process before actual receipt by a beneficiary.  This paragraph shall not prohibit an assignment by a beneficiary to any other beneficiary of this trust. This provision shall not apply to a trustor(s)' interest in the trust estate.

C.   **COMMUNITY PROPERTY AGREEMENT:**

We agree and declare that all property shall be classified as community or separate property by a community property agreement entered into by us now or in the future, or, if no valid community property agreement exists, then we agree that community property transferred to the trust shall remain community property throughout our marriage, and that separate property transferred to the trust shall remain separate property, unless classified otherwise by a future community property agreement.  Any distribution or withdrawal of community property or separate property shall retain its character as separate property, respectively.

D.   **INCAPACITY OF TRUSTEE:**

Whenever two licensed, practicing medical doctors who are not related by blood or marriage to either of us or any beneficiary or trustee of this trust certify in writing that a person serving as trustee cannot discharge the duties of trustee because of mental or physical infirmity and the certificates are personally served upon that person, then the office of that person shall be deemed vacated and the alternate trustee provisions under Article One of this Declaration of Trust shall apply.  However, if after receipt of the certificates, the trustee alleged to be incompetent gives written notice to the person causing the certificates to be issued that he or she disagrees with the doctors, then the trustee shall continue in office unless he or she resigns or is removed by a court of competent jurisdiction.  If, at a later date, the removed trustee regains competency and can evidence said competency with written affidavits from two licensed, practicing medical doctors who are not related by blood or marriage to either of us or any beneficiary or trustee of this trust, and serves said affidavits upon at least one (1) acting trustee, the removed trustee shall resume duties as trustee hereunder.  Anyone dealing with the trust may rely upon written medical certificates or a photocopy of them, presented to them by the successor trustee(s), or original trustee(s), and shall incur no liability to any beneficiary for any dealings with any designated trustee(s) in good faith reliance on said certificates. This



provision is inserted in this document to encourage third parties to deal with any trustee without the need for court proceedings.

E.   **INCAPACITY OF THE SURVIVING TRUSTOR OR BOTH TRUSTORS:**

If the surviving trustor or both of us are replaced as trustee(s) of this trust as provided above, the successor trustee(s) shall use the trust estate for our benefit and for the benefit of anyone else authorized by Article One or Two of this living trust. Any income not paid to or for our benefit or to or for the benefit of other authorized beneficiaries shall be added to the principal.

The foregoing shall also apply to distributions by the trustee(s) whenever the surviving trustor or both of us who are not serving as trustee(s) become incapacitated. The trustor(s)' incapacity or regaining of capacity shall be established in the same manner provided for establishing the incapacity or regaining of capacity of trustee(s) as provided in Article Five D. above.

F.   **ASSURANCES OF TRUSTOR:**

We are aware that persons dealing with one of us will be concerned whether the other trustor may have modified or revoked the trust. We hereby agree that anyone dealing with the trust may rely on the original trust document and in the absence of actual notice of any modification or revocation of this trust, it shall be conclusively presumed that the trust is in full force and effect as stated herein. This assurance is given to encourage people to deal with acting trustee(s) or either trustor. Further, this assurance is given to encourage successor trustee(s) and third parties to rely on the trust document as presented to the successor trustee(s). This provision is binding upon all successors in interest to this trust.

G.   **LIABILITY OF TRUSTEE(S):**

1.   **LIABILITY OF SUCCESSOR TRUSTEE(S):**

No trustee shall be liable for or responsible for any act, omission or default of any predecessor trustee. No successor trustee shall have a duty to audit or investigate the administration of accounts by a predecessor trustee.

2.   **NOTICE TO TRUSTEE(S):**

Unless the trustee(s) receive actual written notice of an event affecting a beneficial interest in this trust, the trustee(s) shall not be liable to any beneficiary for making distributions as though the event had not occurred.

3.   **APPLICATION OF TRUST FUNDS:**

The trustee(s) shall be solely responsible for the manner in which trust assets are applied. No person paying money or delivering property to the trustee(s) shall be responsible for its application.



H.   **GIFTS MADE BY TRUSTOR(S):**

Any distribution made as a gift of principal or income of this trust to anyone other than
trustors shall be considered a distribution of such assets first to trustors and then a direct
transfer of such assets from trustors to donee(s). Trustors suggest, but do not legally mandate,
that any assets which are the subject of such a gift be first distributed to trustors so that
trustors can complete such gifts directly.

I.   **DISAPPEARANCE:**

If we or the survivor of us should disappear and our whereabouts or the whereabouts of the
survivor of us should remain unknown for a period of forty-five (45) days, our successor
trustee(s) shall take over the management of this trust until one or both of us returns.  If we
or the survivor of us are not seen or heard of for a period of one year and our bodies or body
as the case may be have or has not been recovered, our successor trustee(s) shall presume that
we are not alive, and shall proceed with the distribution of the assets of this trust as
hereinbefore provided.

J.   **SINGULAR/PLURAL, GENDER AND DEFINITIONS OF COMMON TERMS:**

Wherever the context requires, the singular includes the plural, and the masculine includes
the feminine and neuter. Also, in construing this trust, the terms "lineal descendants" and
"issue" shall include legally adopted lineal descendants and issue and lineal descendants and
issue born or adopted before or after the execution of this trust. All references to I.R.C. §
and/or Reg. § shall include any amendments and/or equivalent successor section to said code
or regulation.

Dated: _April 3, 2002_

**TRUSTORS AND TRUSTEES**

_Richard A. Musgrave_
Richard A. Musgrave

_Peggy B. Musgrave_
Peggy B. Musgrave

24



State of California       )
             )
County of Santa Cruz     )

On _April   3_, _2002_, before me, Dennis R. Book, Notary Public, personally appeared
RICHARD A. MUSGRAVE and PEGGY B. MUSGRAVE, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within
instrument and acknowledged to me that they executed the same in their authorized capacities, and
that by their signatures on the instrument the persons, or the entity upon behalf of which the persons
acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____   (Seal)





1

## SCHEDULE A

Assets listed on this Schedule A are for purposes of illustration and record keeping.  All assets of the trust may not be listed here, and this Schedule A shall in no way be construed to limit the number or amount of assets held by this living trust.  This Schedule A shall in no way be used to determine the status of assets as community or separate in classification under state statute.  Classification of assets shall be determined solely by community property agreement or under state statute.

- ALL BANK ACCOUNTS

- ALL STOCKS

- ALL BONDS

- ALL ACCOUNTS RECEIVABLE

- ALL BUSINESS ASSETS

- ALL REAL ESTATE

- ALL MOTOR VEHICLES

- ALL PERSONAL PROPERTY

- ALL ASSETS OF ANY KIND AND WHEREVER LOCATED



# SCHEDULE A

### RICHARD MUSGRAVE

1.      Account with Salomon Smith Barney
        a.     FBO Richard A. Musgrave, TTEE
              (CA tax exempts and US bonds)

2.      Life Insurance, payable to "Trust"

### PEGGY B. MUSGRAVE

1.      Account with Salomon Smith Barney
        a.     FBO Peggy B. Musgrave TTEE
        b.     Life Insurance

### REAL ESTATE

1.      Hartland Four Corners, Vermont Mobile Home
2.      Mobile home located in De Anza Park



## COMPREHENSIVE TRANSFER DOCUMENT

The undersigned hereby declare that solely as trustees of and for the benefit of the revocable living trust executed by the trustors and by the initial trustees, and under the provisions of said trust agreement, the undersigned are now holding and will hold, solely and exclusively for and in behalf of such trust, the following: any and all properties of all kinds, whether presently owned or hereafter acquired (regardless of the names by which acquired) including, without limitation (except as specifically excepted herein):

> bank accounts, certificates of deposit, mutual and money market funds of all kinds, securities, agency and custody accounts, notes, real estate wherever located (including mortgages, contract for deed interests, leaseholds and mineral interests), household furniture and fixtures, jewelry, antiques, and any and all other assets wherever located.

> All such property is hereby transferred to and the same shall be owned by such trust.

Tax-favored assets on which recognition of income has been deferred including but not limited to IRAs, Roth IRAs, qualified plans under IRC §401(a), tax sheltered annuities, and qualified deferred compensation shall not be included pursuant to this comprehensive transfer document, and shall not be deemed to be transferred to the trust.

This declaration shall apply even though record ownership or title, in some instances, may, presently or in the future, be registered in the individual name or names of either of us, in which event such record ownership shall hereafter be deemed held in trust even though such trusteeship remains undisclosed.

The undersigned hereby affirm and declare that from and after the date hereof:

1. All properties described above will be held by the undersigned exclusively for and in behalf of said trust as true owner(s) (subject to any and all instructions from the trustee(s) of said trust), and

2. Except to the extent of beneficial interests provided to the undersigned under the terms and provisions of said trust (as now written and as the same may in the future be amended), the undersigned have and shall have no personal interest in any of the properties described above, and

3. All liabilities which relate in any way to the acquisition of or which are a lien upon any of the properties governed by this declaration shall be borne by the trust which, pursuant to this declaration, owns such properties.

This declaration of exclusive trust ownership and waiver of interest is intended to be and shall be binding upon the undersigned's heirs, legal representatives and assigns and shall be revocable only by written instrument executed by the undersigned.



Page 2, Comprehensive Transfer Document of the Richard and Peggy Musgrave Revocable Trust.

## RICHARD AND PEGGY MUSGRAVE REVOCABLE TRUST

### TRUSTORS AND TRUSTEES

_Richard A. Musgrave_ (signature)
Richard A. Musgrave

_Peggy B. Musgrave_ (signature)
Peggy B. Musgrave

State of California                              )
                                                 )
County of Santa Cruz                             )

On __April 3__ , __2002__, before me, Dennis R. Book, Notary Public, personally appeared RICHARD A. MUSGRAVE and PEGGY B. MUSGRAVE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose names are subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacities, and that by their signatures on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____        (Seal)



DENNIS R. BOOK
Commission # 1251880
Notary Public - California
Santa Cruz County
My Comm. Expires Jan 29, 2004



## MARITAL PROPERTY DECLARATION

We, Richard A. Musgrave ("Richard") and Peggy B. Musgrave ("Peggy"), husband and wife, feel it is important to set forth the character of our properties, and do hereby acknowledge, declare, and agree as follows:

1.     Richard hereby declares that all property owned by him is the community property of himself and Peggy, notwithstanding the form in which title is held to such property and any such property that may heretofore have been his separate property is transmuted to community property.

2.     Peggy hereby declares that all property owned by her is the community property of herself and Richard, notwithstanding the form in which title is held to such property and any such property that may heretofore have been her separate property is transmuted to community property.

3.     We both hereby declare that upon the execution of this declaration all real or personal property owned by either of us or both of us, notwithstanding the form in which title is held to such property, shall be owned by us in equal shares as our community property, and if any such property was heretofore our separate property, it is hereby transmuted to community property.

4.     All real and personal property owned by or standing in the name of either Richard or Peggy or in both of our names and whether held jointly by us of record, in joint tenancy, in tenancy in common, or otherwise on the date of this declaration and any property subsequently acquired out of such property is and shall constitute our community property for all legal purposes.  We do not intend to change the character of the ownership of our property by holding it in joint tenancy or such other forms.  If we use such forms for holding title, it is for convenience only.

5.     All property subsequently acquired by Richard or Peggy, except property acquired by gift or inheritance by either of us, or property when acquired which is identified in writing as the separate property of the acquiring spouse, shall be our community property regardless of how title to the property is held.

Executed on _Dil 3_ , at Santa Cruz, California.


_Ron B. Musgrave_
RICHARD A. MUSGRAVE

_Peggy B. Musgrave_
PEGGY B. MUSGRAVE



I hereby revoke, in its entirety, the Trust Agreement executed by me and dated July 6, 1983, as amended and restated February 24, 2000.

April 3, 2002

_____
RICHARD A. MUSGRAVE



I hereby revoke, in its entirety, the Trust Agreement executed by me and dated July 6, 1983, as amended and restated February 24, 2000.


April 3, 2002                              _Peggy B. Musgrave_
                                           PEGGY B. MUSGRAVE



# RICHARD AND PEGGY MUSGRAVE REVOCABLE TRUST

### Certification of Trust
(California Probate Code Section 18100.5)

Richard A. and Peggy B. Musgrave, Trustees, hereby present this Certification of Trust, in lieu of providing a copy of the trust instrument, to establish the existence and terms of the trust, as set forth below.

**1.      Purpose of Certification of Trust.**  This Certification is intended to serve as a "Certification of Trust" under California Probate Code §18100.5, as amended.  Its purpose is (1) to certify the existence of the Richard and Peggy Musgrave Revocable Trust (the "Trust") and the identity and powers of the Trustee, and (2) to summarize some of the more important provisions of the Trust so that the Trustee can deal with third parties, such as financial institutions, stock transfer agents, brokerage houses, insurance companies, and others, without disclosing the entire Trust, which is a private and confidential document.

**2.      Creation of the Trust.**  The trust instrument creating the Trust (the "Trust Agreement") was executed on April 3, 2002, by Richard A. Musgrave and Peggy B. Musgrave, as Trustors, and as Trustees.  The Trust continues in existence.

**3.      Trust Revocable.**  The Trust is revocable.  The Trustors reserved the right to revoke, amend, or modify the trust instrument during their lifetimes.  The Trust has not been revoked, modified, or amended in any manner that would cause the representations contained in this Certification of Trust to be incorrect.

**4.      The Trustees.**  The initial trustees of the Trust, Richard A. Musgrave and Peggy B. Musgrave  (the "Trustee"),  are the currently serving and acting trustees of the Trust.  This Certification of Trust is being signed by all of the currently serving and acting trustees of the Trust.

**5.      Powers of the Trustee.**  The trustee(s) are authorized by the Trust Agreement to invest, reinvest, sell, convey, pledge, mortgage, lease, manage, operate, control, transfer title, divide, convert or allot the trust property, including real and personal property including but not limited to securities of all kinds, and to sell upon deferred payments

**6.      Signature Authority.**  Either Trustee, has the power, acting alone, to act on behalf of the Trust and to sign all documents exercising the powers of the Trustee.  Under the Trust Agreement, no person other than the Trustee is required or needed to sign such documents for them to be effective as to the Trust.



7.     **Reliance by Third Parties**. This Certification contains a true and correct representation of the terms of the Trust. All third parties dealing with the Trustee may rely on this Certification as a true statement of the provisions of the Trust as of the date this Certification is presented to the third party (regardless of the date of execution of this Certification), unless the third party has actual knowledge that the representations contained in this Certification are incorrect. A third party who acts in reliance upon this Certification of Trust without actual knowledge that the representations contained herein are incorrect is not liable to any person for so acting.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 3, 2002, at Santa Cruz, California.


RICHARD A. MUSGRAVE


PEGGY B. MUSGRAVE


2



STATE OF CALIFORNIA          )

COUNTY OF SANTA CRUZ     )


     On April 3, 2002, before me, the undersigned notary public, personally appeared RICHARD A. MUSGRAVE and PEGGY B. MUSGRAVE , personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose name is subscribed to the within instrument, and acknowledged to me that they executed the same in their authorized capacity, and that by their signature on the instrument the persons, or the entity upon behalf of which the persons acted, executed the instrument.

     WITNESS my hand and official seal.


_____

NOTARY PUBLIC

3

