1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

THE RICHARD MUSGRAVE BYPASS
TRUST, BY HARRY D. KRAUSE,
TRUSTEE,

                   Plaintiff,

           v.

PEGGY B MUSGRAVE, et al.,
                   Defendants.

Case No. 15-CV-02280-LHK

**ORDER GRANTING MOTION TO
DISMISS**

Re: Dkt. No. 16

Defendants Dennis Book ("Book") and Book & Book, LLP (collectively, the "Book Defendants") have filed a motion to dismiss Counts 2, 14, 15, 16, and 17 of Plaintiff's Complaint as to the Book Defendants. ECF No. 16. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Book Defendants' motion.

# I.    BACKGROUND

## A.  Factual Background

Plaintiff The Richard Musgrave Bypass Trust (the "Bypass Trust") brings this case through its current trustee, Harry D. Krause ("Krause"), for breaches of fiduciary duty, breaches of trust, conversion, and unjust enrichment. Complaint, ECF No. 1 ("Compl."), ¶ 1. The Complaint brings causes of action against Peggy Musgrave, a former trustee of the Bypass Trust; Pamela Clyne, a

1

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

former trustee of the Bypass Trust; Dennis Book, the estate planning attorney who drafted the trust documents for the Bypass Trust and Peggy Musgrave's former attorney in her capacity as trustee of the Bypass Trust; Book & Book LLP, the law firm of which Dennis Book is a principal; and Does 1 through 10.

This action concerns the creation of the Bypass Trust following the death of Richard Musgrave and the subsequent administration of the Bypass Trust.  The Court briefly summarizes the history of the Bypass Trust, as alleged in the Complaint.

### 1.  The Richard and Peggy Musgrave Revocable Trust

Richard and Peggy Musgrave were married in 1967.  Compl. ¶ 19.  Peggy had three children from a prior marriage: Pamela Richman (now Pamela Clyne), Roger Richman, and Thomas Richman.  *Id.* ¶ 20.  Richard did not have any children, but he did have a close relationship with his nephew Harry Krause, who considered Richard "a surrogate father."  *Id.* ¶¶ 20-21, 23-24.

In early 2002, Richard and Peggy Musgrave sought estate planning services from Book to arrange how their estate would be distributed upon the death of each spouse.  *Id.* ¶ 26.  The Musgraves had four goals for their estate planning: "to (1) leave the survivor with use of the estate to meet her (his) needs, (2) to keep the format of percentage distribution of bequests at second death, (3) to take advantage of both exemptions, and (4) to have our family lawyers [Harry Krause and Pamela Clyne's husband James Clyne] serve as trustees but to see the details of bequests at second death only."  *Id.*  At the time, the Musgraves prepared a "Summary of Finances" that estimated that Richard had assets worth approximately $1,430,000 in his name, plus the right to approximately $60,000 per year from Richard's pensions so long as either he or Peggy remained alive.  *Id.* ¶ 28-29.  The Summary of Finances estimated that Peggy had assets worth approximately $1,038,000 in her name.  *Id.* ¶ 30-31.  The Summary of Finances indicated that the parties had jointly-held real estate in Vermont and Santa Cruz valued at $173,600 and $300,000, respectively.  *Id.* ¶ 33.

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

1

### a.  The Transfer of Assets to the Richard and Peggy Musgrave Revocable Trust

In early 2002, Book prepared a "Declaration of Trust," a "Marital Property Declaration," and a "Comprehensive Transfer Agreement" for the Musgraves, all of which the Musgraves executed in 2002. *Id.* ¶ 36, Ex. 1.  The Declaration of Trust provided for a revocable trust, The Richard and Peggy Musgrave Revocable Trust ("the Trust"), which would contain all of the couple's assets except "tax favored assets on which recognition of income has been deferred including but not limited to IRAs, Roth IRAs, qualified plans under IRC § 401(a), tax sheltered annuities, and nonqualified deferred compensation." *Id.* ¶ 37-38, Ex. 1.  In the Comprehensive Transfer Document, the Musgraves effected the transfer of "any and all properties of all kinds, whether presently owned or hereinafter acquired (regardless of the names by which acquired)" to the Trust, except for the Musgraves' "[t]ax-favored assets on which recognition of income has been deferred." *Id.* ¶ 52.  In the Marital Property Declaration, each of the Musgraves transmuted all of their separate property to community property. *Id.* ¶ 50-51.

The Complaint alleges that the only assets listed in the Summary of Finances that qualified for the "tax deferred" exclusion from transfer to the Trust were IRAs held by Richard, then worth $45,035, and IRAs held by Peggy, then worth $206,626. *Id.* ¶ 39.  Book advised the Musgraves that these "Pensions, Profit Sharing, Benefits, IRS and similar types of retirement accounts" "should name each other as primary beneficiary in order to preserve maximum tax flexibility" and that the "Trust should be named as the secondary beneficiary." *Id.* ¶ 40.  The Complaint alleges that the Musgraves followed Book's advice for these assets. *Id.*  The Complaint additionally alleges that Peggy had an AIG annuity that was not included in her "tax deferred" IRA. *Id.* ¶ 39.

Book advised the Musgraves to name the trustee of the Richard and Peggy Musgrave Revocable Trust as the primary beneficiary of their life insurance policies, with each of the Musgraves listing the other spouse as the secondary beneficiary. *Id.* ¶ 53.  The Complaint alleges that the Musgraves followed Book's advice for their life insurance policies. *Id.* ¶ 54.

### b.  Provisions in the Trust for the Death of the Musgraves

The Declaration of Trust provided that:

3

1. Upon the death of the first spouse, the Trustee(s) shall distribute $50,000.00 each to PAMELA CLYNE, ROGER RICHMAN, THOMAS RICHMAN, and HARRY CRAUSE [sic; Krause]. In the event any of the aforementioned do not survive the first spouse to die, their gift shall lapse.

. . . If Richard is the first to die, the Trustee (s) shall distribute the sum of $20,000.00 to Harvard University . . . .

2. The surviving trustor's share of the net proceeds of this trust shall remain in the living trust with the surviving trustor as primary trustee and primary beneficiary. Debts of decedent-trustor, debts of this trust, and expenses of the last illness and funeral expenses of the decedent-trustor shall be paid from decedent-trustor's share. After said expenses are paid, our trustee(s) shall divide the decedent-trustor's share of net proceeds of this living trust into separate shares, hereinafter referred to as the Marital Deduction Share and the Non-Marital Share. Our trustee(s) may divide community property in a non pro rata manner and shall take into account any written agreement between the trustor [sic] providing for a non pro rata division of their community property and the effect of such agreement on community property passing outside the trust. The trustee(s) shall have the discretion to select the assets to be allocated, but such assets as are selected shall be valued as hereinafter provided.

*Id.* ¶ 41. The Declaration of Trust provided that the Non-Marital Share of the assets would then be used to fund an irrevocable "Bypass Trust." *Id.* ¶ 44.

The surviving spouse would become the sole trustee of both the original Trust and the Bypass Trust, with Harry Krause and James Clyne as the co-successor trustees of both trusts. *Id.* ¶ 45-46. The Declaration of Trust provided that "[t]he trustee shall pay to or use for the benefit of the surviving trustor so much of the net income and principal of the Bypass Trust as the trustee shall deem necessary for the health, education, maintenance, or support of the surviving trustor, taking into consideration all other means available to the surviving trustor for such purposes from all sources known to our trustee." *Id.* ¶ 97.

The Bypass Trust would be distributed to the beneficiaries named by the first spouse to die upon the death of the surviving spouse. *Id.*, Ex. 1, Third Amendment. In the Third Amendment to the Trust, Richard specified that his beneficiaries would be: (1) Doctors Without Borders USA, to receive 10% of his share of the trust; (2) Alzheimer's Disease Research (now Brightfocus), to receive 10%; (3) Harry Krause, to receive 20%; (4) Harry Krause's three siblings—Beate Eisenfuehr, Angela Feddersen, and Detlev Dorendorf—each to receive 12%; (5) Harry Krause's three sons—Philip, Thomas, and Peter Krause—each to receive 8%. *Id.* ¶ 55.

United States District Court
Northern District of California

Richard Musgrave passed away in early 2007, leaving Peggy as the surviving spouse.  *Id.* ¶ 55-56.

### 2.  The Creation of the Bypass Trust

#### a.  Events Involving the AIG Annuity, the MetLife Insurance Policy, and the Riversource Insurance Policy

Upon Richard's death in 2007, the Musgraves' investment advisor faxed Book a list of the couple's assets at the time of Richard's death.  *Id.* ¶ 56.  The list indicated that the Trust included an AIG annuity, valued at $560,392.49, and a MetLife insurance policy, valued at $80,861.48.  *Id.*

Shortly thereafter, Peggy sold the AIG annuity and used the proceeds to purchase an Allstate annuity of approximately the same value.  *Id.* ¶ 58.  She purchased the Allstate annuity in her own name and listed as the primary beneficiary "The Survivor's Trust of the Richard and Peggy Musgrave Trust 04/03/2002," which would be Peggy's resulting trust after the Richard and Peggy Musgrave Revocable Trust was divided to create Richard's Bypass Trust.  *Id.*

Around the same time, the MetLife insurance policy was sold and a second MetLife insurance policy naming different beneficiaries was purchased in its place.  *Id.* ¶ 56, 59-62.  The Complaint does not specify who sold the MetLife insurance policy.  *See id.*

In early 2007, Peggy and Book both contacted the Riversource Insurance company regarding a life insurance policy in Richard's name.  *Id.* ¶ 65-66.  The Riversource insurance policy was valued at $82,105 at the time of Richard's death and named the Trust as a beneficiary. *Id.* ¶ 65.  On behalf of the Trust, Book then received $82,105 from the Riversource Insurance company.  *Id.* ¶ 66.

#### b.  Events Involving the Trust Beneficiaries

In May 2007, Book sent checks for $50,000 each to Roger Richman, Pamela Clyne, Thomas Richman, and Harry Krause, and a check for $20,000 to Harvard University.  *Id.* ¶ 68. Harry Krause wrote a letter to Book on June 4, 2007 confirming receipt of the $50,000 check and asking for any information about Richard Musgrave's estate to which Harry Krause was entitled. *Id.* ¶ 69.  Krause repeated his request on July 3, 2007 and July 20, 2007.  *Id.* ¶ 70.  Book

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

1  responded to Krause on July 24, 2007 and sent Krause a copy of the Declaration of Trust,

2  including the Third Amendment.  *Id.* ¶ 71.  Neither Book, Peggy Musgrave, nor Pamela Clyne

3  alerted either of the charitable beneficiaries named in the Third Amendment of their status as

4  beneficiaries of Richard's estate.  *Id.* ¶ 73.  Richard Musgrave's will was never filed with probate.

5  *Id.* ¶ 90.

6  **c.   The Property Division**

7  Richard's Bypass Trust was funded on about March 8, 2008.  *Id.* ¶ 75.  The funding

8  allocated to the Bypass Trust was determined as follows:

9  First, the value of the assets deemed within the Richard and Peggy Musgrave Revocable

10  Trust at the time of Richard's death was determined to be $2,678,545.  *Id.* ¶ 76.  This amount was

11  divided in half to obtain Richard's half-share of the Trust, $1,339,273.  *Id.*  The amount of

12  Richard's half-share was determined to be equivalent to 72% of the Trust's "stock" holdings at the

13  time of his death.  *Id.*  "Stock" holdings included "everything other than cash, royalties, or real

14  estate."  *Id.*  The Bypass Trust was then funded with 72% of the stock holdings, worth

15  $1,514,466.00 at the date of the property division in 2008.  *Id.*  The full amount of the

16  distributions made to Peggy's children, Krause, and Harvard ($220,000); Richard's memorial

17  service expenses ($10,382); the attorney's fees associated with the property division ($20,000);

18  and appraisal fees ($750) were deducted from the Bypass Trust.  *Id.*  This left the Bypass Trust

19  with $1,263,334.  *Id.*

20  The remainder of the funds from the Richard and Peggy Musgrave Revocable Trust at the

21  time of the property division became Peggy's share of the Trust.  *Id.* ¶ 77.  Peggy's share of the

22  Trust was worth an estimated $1,566,626 at the time of the property division.  *Id.*  Additionally,

23  several assets were considered to be assets outside the Trust and were not considered when

24  determining how to allocate funds to the Bypass Trust.  *Id.* ¶ 81-82.  These assets were: (1) IRAs

25  worth $245,835; (2) annuities worth $560,392; (3) life insurance worth $82,105; and (4)

26  personalty worth $62,500.  *Id.* ¶ 82.  The Complaint suggests that the $82,105 in life insurance

27  was the proceeds of the Riversource insurance policy and that the $560,392 in annuities was the

United States District Court<br>Northern District of California

28

6

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

Allstate annuity purchased with the proceeds of the AIG annuity.  *Id.* ¶ 84-85.  Finally, Peggy held several educational accounts in her name on behalf of her grandchildren and great-grandchild that were not considered when determining how to fund the Bypass Trust.  *Id.* ¶ 95.  These accounts were worth a total of $185,943.76.  *Id.*

The Complaint alleges that the Allstate annuity, the proceeds of the Riversource insurance policy, and the Musgraves' personalty should have been deemed Trust assets at the time of the property division.  *Id.* ¶¶ 83-85, 92-94.  The Complaint further alleges that the Bypass Trust was underfunded because it was not compensated for Richard's half-share of all assets held outside the Trust, including the IRAs, the annuities, the life insurance, the personalty, and the educational accounts.  *Id.* ¶ 86-88, 95.  Additionally, the Complaint alleges that the Bypass Trust was underfunded because Peggy's half-share of the Trust assets exceeded Richard's half-share prior to deductions for expenses by more than $52,000; and because at least the $220,000 in distributions to Peggy's children, Harry Krause, and Harvard should have been divided between the Bypass Trust and Peggy's surviving trust instead of charged solely to the Bypass Trust.  *Id.* ¶ 78-79.

### 3.  The Bypass Trust under Peggy Musgrave's Trusteeship

Peggy Musgrave was the original trustee of the Bypass Trust.  *Id.* ¶¶ 2, 97, 102.  A "Memorandum of Allocation" produced by Book contemporaneous with the property division, *id.* ¶ 80, stated that the surviving spouse, in this case Peggy, was entitled to "quarter-annual or more frequent" distributions of "[s]uch amount of net income from the Bypass Trust, as needed for the health, maintenance and support in accordance with his or her accustomed standard of living."  *Id.* ¶ 96.  The Complaint alleges that this provision in the Memorandum of Allocation contradicted the Declaration of Trust, which entitled Peggy to income from the Bypass Trust only if "necessary for the health, education, maintenance, or support of the surviving trustor, taking into consideration all other means available to the surviving trustor for such purposes from all sources known to our trustee."  *Id.* ¶¶ 96-98.

In late 2008, Peggy mentioned to Krause that Peggy no longer wished to serve as Trustee of the Bypass Trust and offered to resign in favor of Krause.  *Id.* ¶ 102.  Subsequently, Krause

7

received a statement of the Bypass Trust's holdings in November 2008 that showed that Peggy was paying herself the income of the Bypass Trust on a quarterly basis.  *Id.* ¶ 103.  Harry Krause consulted with his son Thomas Krause, who is also a lawyer, and the two of them concluded that Peggy was not entitled to the Bypass Trust income unless necessary, as defined in the Declaration of Trust.  *Id.* ¶ 104.

From January 2009 through March 2009, Harry Krause and Peggy exchanged several letters in which they disputed Peggy's entitlement to income from the Bypass Trust.  *Id.* ¶ 106. Krause additionally sent a letter to Book on January 29, 2009 explaining the alleged income discrepancy.  *Id.* ¶ 105.  Book responded to Krause on April 3, 2009, and agreed with Krause that Peggy was not entitled to collect the Bypass Trust income on an unrestricted basis.  *Id.* ¶ 107. Book's letter to Krause further informed Krause that Peggy had decided not to resign as Trustee of the Bypass Trust.  *Id.*

In December 2009, Peggy informed Krause that Peggy had discussed the trusts with James Clyne (Pamela Clyne's husband, also an attorney); that Peggy had fired Book and retained new counsel; and that Peggy's new attorney had redrafted Peggy's survivor's trust.  *Id.* ¶ 110; *see also* ECF No. 17 ¶ 1 (Book Declaration, stating that Book ceased representing Peggy Musgrave in 2009).  The Complaint alleges that Krause was not named as a co-successor trustee of the redrafted survivor's trust.  Compl. ¶ 112.

In August 2013, Peggy appointed her daughter, Pamela Clyne, as co-trustee of the Bypass Trust without notifying the beneficiaries of the Bypass Trust of the appointment.  *Id.* ¶ 114.  The appointment was prepared by attorney Minda Parrish, who received $1,975 out of the Bypass Trust in compensation.  *Id.*

In early 2014, Pamela Clyne, Peggy Musgrave, and Harry Krause discussed a possible agreement to pay Peggy Musgrave a lump sum from the Bypass Trust in exchange for Peggy Musgrave relinquishing any interest she had in the interest and principal of the Bypass Trust, thus permitting the Bypass Trust to be dissolved and distributed.  *Id.* ¶¶ 116-22.  Pamela Clyne, Peggy Musgrave, and Harry Krause planned to discuss the proposed agreement with Minda Parrish on

April 17, 2014.  *Id.* ¶ 122.  On April 17, 2014, Pamela Clyne informed Krause that Minda Parrish was not willing to dissolve the Bypass Trust but that instead trusteeship of the Bypass Trust could be passed solely to Krause.  *Id.* ¶ 124.  During a conference call the same day between Minda Parrish, Pamela Clyne, Harry Krause, and Thomas Krause, Parrish reiterated that she was unwilling to act as the attorney in the dissolution of the Bypass Trust.  *Id.* ¶ 125.

On May 21, 2014, Parrish sent Harry Krause a letter indicating that Peggy Musgrave had relinquished her interest in the trust; that Peggy Musgrave and Pamela Clyne had both resigned as trustees; that James Clyne had "declined to act;" and that Peggy Musgrave had paid herself $44,371.52 from the Bypass Trust as trustee fees for the period of 2007-2014.  *Id.* ¶ 131.  The letter gave Harry Krause the opportunity to accept the trusteeship of the Bypass Trust, which Krause accepted.  *Id.* ¶¶ 131-32.

### 4.  The Bypass Trust under Harry Krause's Trusteeship

In June 2014, Krause wrote to Parrish requesting documents related to the Bypass Trust. *Id.* ¶¶ 134-36.  In response, Parrish sent Krause "documents purporting to be her complete file on the matter, as well as files she had received from Dennis Book."  *Id.* ¶ 137.  The Complaint alleges that the first time Krause received "any information about the March 2008 property division" was when he received the files from Parrish in the summer of 2014.  *Id.* ¶ 138.  Harry Krause asked his son, Thomas Krause, to review the files.  *Id.*

On September 20, 2014, Thomas Krause delivered a memo to Harry Krause regarding the documents in the Bypass Trust file and detailing alleged errors in funding the Bypass Trust.  *Id.* ¶ 139, Ex. 2 (the September 20, 2014 memo).  Harry Krause sent a copy of the September 20 memo together with attachments, including a list of requested documents related to the Bypass Trust, to Minda Parrish and Peggy Musgrave on September 22, 2014.  *Id.* ¶ 140, Ex. 2.  Parrish responded that she no longer represented Peggy Musgrave.  *Id.* ¶ 141.

Thomas Krause then sent the September 20 memo and its attachments to Pamela Clyne on October 5, 2014, and suggested that the parties jointly contact Book to discuss the memo.  *Id.* ¶ 142.  Thomas Krause and James Clyne had a conversation about the September 20 memo and

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

began an email exchange regarding the Bypass Trust.  *Id.* ¶¶ 143, 145-46.  Thomas Krause, James Clyne, attorney Chris McPhillips, and Pamela Clyne continued to discuss the Bypass Trust through email exchanges and phone calls through the end of December 2014.  *Id.* ¶¶ 145-46, 148-50, 152-54, 156-62, 164, 167-69.  Throughout these conversations, Thomas Krause repeatedly requested documents from Peggy Musgrave and Pamela Clyne but did not receive the requested documents.  *Id.* ¶¶ 157-59, 161-63.

The Complaint alleges that sometime in the fall of 2014, despite Thomas Krause's suggestion that the parties contact Book together, Pamela Clyne "contacted Mr. Book unilaterally" and "gave Dennis Book false and/or misleading information about Richard's heirs and beneficiaries."  *Id.* ¶ 144.

On November 10, 2014, Harry Krause wrote a letter to Book asking Book to send Krause a copy of Richard Musgrave's will and a response to the September 20 memo.  *Id.* ¶ 147.  Krause requested a response by December 1, 2014.  *Id.*  After Book did not respond by December 1, Thomas Krause left a voicemail for Book on December 3, 2014, and sent an email to Book and Book's law partners on December 4, 2014.  *Id.* ¶ 151.  On December 8, 2014, Book provided Thomas Krause with a copy of Richard Musgrave's will.  *Id.* ¶ 155.  Book agreed to participate in a single interview about the Bypass Trust with Krause's then-attorney, on condition that neither Thomas nor Harry Krause attend the interview.  *Id.*  On January 27, 2015, Book met with Lawrence Brenner, Harry Krause's then-attorney in Krause's capacity as Trustee for the Bypass Trust.  *Id.* ¶ 172.  In that conversation, Book "acknowledged that the Riversource insurance proceeds should not have been removed from the trust, and acknowledged the Bypass Trust's arguments as to the personalty and at least $200,000 of the $220,000 distributions."  *Id.*  Book maintained that the annuity and Peggy's IRA were properly Peggy's separate property.  *Id.*  After this interview, Book failed to respond to further requests for documents and declined to engage in further discussions with Krause.  *Id.*

In January 2015, Stephen Picone wrote to Harry Krause to inform Krause that Picone was Peggy Musgrave's attorney.  *Id.* ¶ 170.  Krause responded to Picone and asked Picone for

10

documents related to the Bypass Trust. *Id.* ¶ 171.  Harry and Thomas Krause reiterated the requests for documents to Picone several times throughout February 2015.  *Id.* ¶ 173.  On March 10, 2015, Picone sent a letter to Harry Krause asking for "a precise list of the documents" that Krause sought, to which Harry and Thomas Krause replied on March 17, 2015.  *Id.* ¶ 174. Following a conversation about document production between Picone, Thomas Krause, Harry Krause, Harry Krause's attorney Erin Kolko, and the Musgraves' investment adviser Kevin Mize, Thomas Krause received a letter from Mize attaching 24 pages of documents whose release had been authorized by Peggy Musgrave and Pamela Clyne. *Id.* ¶ 177-78.  As of the time of the filing of the Complaint, Harry Krause asserts that he has not received any other documents from Peggy Musgrave, Pamela Clyne, or their representatives in response to the September 20 memo and Krause's other efforts to obtain documents. *Id.* ¶ 179.

### B.  Procedural History

Harry Krause filed suit on behalf of the Bypass Trust in Krause's capacity as Trustee of the Bypass Trust on May 20, 2015.  ECF No. 1.  The Complaint asserts 17 causes of action related to the funding of the Bypass Trust and Krause's efforts to obtain documents related to the Bypass Trust. *Id.*  Pamela Clyne and Peggy Musgrave filed their Answer to the Complaint on June 30, 2015.  ECF No. 14.  The case was assigned to the undersigned judge on July 30, 2015.  ECF No. 28.

On July 14, 2015, Pamela Clyne and Peggy Musgrave filed a Third Party Complaint against Minda Parrish.  ECF No. 24.  On September 11, 2015, Minda Parrish filed a motion to dismiss.  ECF No. 39.  Pamela Clyne and Peggy Musgrave did not oppose Parrish's motion to dismiss and instead filed a First Amended Third Party Complaint on October 16, 2015.  ECF Nos. 42, 49.  The Court accordingly denied Parrish's motion to dismiss as moot on October 29, 2015. ECF No. 64.

On July 6, 2015, the Book Defendants filed the instant motion to dismiss.  ECF No. 16. Krause filed an opposition on July 20, 2015.  ECF No. 29.  Krause filed a corrected opposition on July 21, 2015.  ECF No. 30.  The Book Defendants filed a reply on July 31, 2015.  ECF No. 33.

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    Also pending in this case is Krause's motion for partial summary judgment against Pamela

2    Clyne and Peggy Musgrave, filed September 28, 2015 and set for hearing on January 28, 2016.

3    ECF No. 41.  Pamela Clyne and Peggy Musgrave filed their response on October 20, 2015.  ECF

4    No. 51.  Pursuant to the parties' stipulation, Krause's reply is due November 17, 2015.  ECF No.

5    63.

6    **II.    LEGAL STANDARD**

7    **A.  Federal Rule of Civil Procedure 12(b)(6)**

8    Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint

9    for failure to state a claim upon which relief can be granted.  Such a motion tests the legal

10   sufficiency of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In considering

11   whether the complaint is sufficient, the Court must accept as true all of the factual allegations

12   contained in the complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, the Court need

13   not accept as true "allegations that contradict matters properly subject to judicial notice or by

14   exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or

15   unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)

16   (citation omitted).  While a complaint need not allege detailed factual allegations, it "must contain

17   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

18   *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

19   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20   reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility

21   standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

22   a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).

23   **B.  Leave to Amend**

24   If the court concludes that the complaint should be dismissed, it must then decide whether

25   to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

26   "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

27   15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*

28
     Case No. 15-CV-02280-LHK
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

12

1    *v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted). Nonetheless, a district

2    court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on

3    the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

4    undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

5    amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

6    **III.    DISCUSSION**

7            The Book Defendants move to dismiss Counts 2, 14, 15, 16, and 17 as to the Book

8    Defendants under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

9    relief can be granted.  Count 2 is a claim against Book and Peggy Musgrave for breach of

10   fiduciary duty as to individual assets in the Richard and Peggy Musgrave Revocable Trust.

11   Compl. ¶¶ 189-97.  Count 14 is a claim against the Book Defendants for aiding and abetting Peggy

12   Musgrave's breach of fiduciary duty, breach of trust, and conversion.  *Id.* ¶¶ 250-52.  Count 15 is a

13   claim against Book for aiding and abetting Pamela Clyne's breaches of fiduciary duty and failure

14   to stop breach of trust.  *Id.* ¶¶ 253-54.  Count 16 is a claim against the Book Defendants for legal

15   malpractice related to the funding of the Bypass Trust.  *Id.* ¶ 255-60.  Count 17 is a claim against

16   the Book Defendants for violation of California Probate Code § 8200 for failure to file Richard

17   Musgrave's will in probate.  *Id.* ¶¶ 261-65.

18           The Book Defendants argue that Counts 2, 14, 16, and 17 are untimely as to the Book

19   Defendants, and that Krause has not alleged the necessary elements of Count 15.  The Court

20   begins by addressing the statute of limitations for Counts 2, 14, 16, and 17 together, and then

21   addresses whether Count 15 states a claim.

22           **A.  Counts 2, 14, 16, and 17**

23           The Book Defendants move to dismiss Counts 2, 14, 16, and 17 as to the Book Defendants

24   as untimely.  ECF No. 16 at 4-8.  The Book Defendants argue that these claims are subject to the

25   statute of limitations in California Code of Civil Procedure § 340.6(a) because the claims allege

26   wrongdoing by the Book Defendants in the course of performing legal services for the Bypass

27   Trust.  California Code of Civil Procedure § 340.6(a) provides:

28

United States District Court
Northern District of California

13

(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:
> (1) The plaintiff has not sustained actual injury.
> (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.
> (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.
> (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

The Book Defendants contend that the statute of limitations on Counts 2, 14, 16, and 17 began to run no later than 2009 and that Krause has not pled the applicability of any of the tolling provisions.  Thus, the Book Defendants argue that the statute of limitations expired no later than 2013—four years after the claims accrued.

Krause does not dispute that California Code of Civil Procedure § 340.6(a) provides the statute of limitations for Counts 2, 14, 16, and 17.  However, Krause argues that Counts 2, 14, 16, and 17 are within California Code of Civil Procedure § 340.6(b), which provides:

(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event.

Krause contends that Counts 2, 14, 16, and 17 are based upon an instrument in writing whose effective date depends upon Peggy Musgrave's future death.  ECF No. 30 at 7-9.  Thus, Krause argues that the statute of limitations for Counts 2, 14, 16, and 17 has not yet begun to run.

Alternately, Krause argues that the statute of limitations was tolled under § 340.6(a) because (1) Krause has not suffered actual injury, (2) Krause was under a "legal disability" prior to his appointment as trustee, and (3) the Book Defendants willfully concealed their wrongdoing.  ECF No. 30 at 9-19.

The Court first addresses the applicability of § 340.6(b).  Because the Court concludes that § 340.6(b) does not apply, the Court then turns to whether Krause has alleged any of the tolling

14

United States District Court
Northern District of California

1   provisions of § 340.6(a).

2         **1.   California Code of Civil Procedure § 340.6(b)**

3         California Code of Civil Procedure § 340.6(b) applies only to actions "based upon an

4   instrument in writing, the effective date of which depends upon some act or event in the future."

5   Krause argues that the claims are based upon the 2002 Declaration of Trust.  ECF No. 30 at 7.

6   According to Krause, the 2002 Declaration of Trust will not become effective until Peggy

7   Musgrave's death because the 2002 Declaration of Trust provides that the proceeds of the Bypass

8   Trust are to be distributed upon Peggy Musgrave's death.  *Id.*  However, this runs contrary to

9   California trust law.

10        Courts in California deem trusts effective upon transfer of assets into the trust.  *See Estate*

11  *of Powell v. Powell ("In re Estate of Powell")*, 83 Cal. App. 4th 1434, 1438 (2000) (revocable

12  *inter vivos* trust by two married settlors providing for distribution of trust assets upon the death of

13  both settlors deemed effective when trust assets were made part of the trust); *Platt v. Wells Fargo*

14  *Bank Am. Trust Co.*, 222 Cal. App. 2d 658, 670 (1963) (irrevocable trust deemed effective when

15  trust assets were distributed to the trust).  Even if the trust provides for the distribution of the trust

16  assets upon the death of one or all of the settlors of the trust, the trust is still deemed effective

17  when the trust is funded.  *See In re Estate of Powell*, 83 Cal. App. 4th at 1438 (revocable *inter*

18  *vivos* trust by two married settlors providing for distribution of trust assets upon the death of both

19  settlors deemed effective when trust assets were made part of the trust).

20        In this case, Krause alleges that assets were transferred to the Richard and Peggy Musgrave

21  Revocable Trust in 2002 upon execution of the Comprehensive Transfer Document.  Compl. ¶ 52,

22  Ex. 1.  Krause alleges that assets were transferred to the Bypass Trust in 2008.  *Id.* ¶ 75.  Under

23  California law, the Richard and Peggy Musgrave Revocable Trust became effective in 2002 and

24  the Bypass Trust became effective in 2008.  Because both trusts were effective in 2009, when the

25  Book Defendants argue that the statute of limitations began to run, California Code of Civil

26  Procedure § 340.6(b) does not delay the running of the statute of limitations.

27        Therefore, the Court analyzes the statute of limitations as to the Book Defendants for

28  15

1   Counts 2, 14, 16, and 17 under California Code of Civil Procedure § 340.6(a).

2       **2.   California Code of Civil Procedure § 340.6(a)**

3       Counts 2, 14, 16, and 17 all allege wrongdoing by the Book Defendants in the course of

4   providing estate planning legal services to Richard and Peggy Musgrave and providing legal

5   services to Peggy Musgrave in her capacity as Trustee of the Bypass Trust.  *See* Compl. ¶¶ 189-97

6   (Count 2: breach of fiduciary duty in the distribution of assets to the Bypass Trust); 250-52 (Count

7   14: aiding and abetting breach of fiduciary duty in distribution of assets to the Bypass Trust); 255-

8   60 (Count 16: legal malpractice for errors made in the distribution of assets to the Bypass Trust);

9   261-65 (Count 17: violation of Cal. Probate Code § 8200 for failure to deliver Richard Musgrave's

10  will to probate within 30 days of learning of Richard Musgrave's death).  The Book Defendants

11  ceased representing Peggy Musgrave by December 2009.  *Id.* ¶ 110.  Thus all of the wrongful acts

12  or omissions committed by the Book Defendants in their representation of Richard and Peggy

13  Musgrave occurred prior to December 2009.  California Code of Civil Procedure § 340.6(a)

14  provides that the statute of limitations for all claims arising from the Book Defendants' legal

15  services expired no later that "four years from the date of the wrongful act or omission" unless one

16  of four tolling provisions applies.  Absent tolling, the statute of limitations for Counts 2, 14, 16,

17  and 17 expired no later than December 2013.

18      Krause argues that the statute of limitations was tolled under § 340.6(a)(1) because Krause

19  did not sustain actual injury prior to filing this lawsuit; under § 340.6(a)(4) because Krause was

20  under a legal disability prior to becoming Trustee for the Bypass Trust; and under § 340.6(a)(3)

21  because the Book Defendants willfully concealed their wrongdoing.  The Court addresses each

22  argument in turn.

23      **a.   Actual Injury**

24      California Code of Civil Procedure § 340.6(a)(1) tolls the statute of limitations during the

25  time that "[t]he plaintiff has not sustained actual injury."  Krause argues that this section should

26  apply because Krause did not sustain actual injury prior to filing the lawsuit because he is only a

27  contingent beneficiary under the Bypass Trust and thus is not yet entitled to any of the proceeds of

28

16

*United States District Court
Northern District of California*

1    the Bypass Trust.  ECF No. 30 at 16-18.

2          Despite Krause's argument in opposition to the motion to dismiss that Krause seeks

3    damages as a contingent beneficiary of the Bypass Trust, *see* ECF No. 30 at 16-17, the Complaint

4    does not include any causes of action brought on Krause's behalf as a contingent beneficiary.  *See*

5    Compl.  Instead, the Complaint alleges causes of action by Krause only in his capacity as Trustee

6    of the Bypass Trust on behalf of the Bypass Trust itself.  *See* Compl.  Krause seeks damages from

7    the Book Defendants to compensate the Bypass Trust for the alleged underfunding of the Bypass

8    Trust in 2008.  *See* Compl. at 50-54 (Prayer for Relief), ¶¶ f, o-p, r.  Under section 340.6(a)(1), a

9    plaintiff has sustained actual injury if "the plaintiff has sustained any damages compensable in an

10   action, other than one for actual fraud, against an attorney for a wrongful act or omission arising in

11   the performance of professional services."  *Jordache Enters., Inc. v. Brobeck, Phleger &*

12   *Harrison*, 18 Cal. 4th 739, 751 (1998).  The Bypass Trust sustained the alleged compensable

13   damages from underfunding in 2008, so the Bypass Trust suffered an alleged actual injury in

14   2008.  *See Jordache Enters.*, 18 Cal. 4th at 751 (actual injury occurs where the plaintiff has

15   sustained any compensable damages).  Because the Bypass Trust, the named plaintiff in this case,

16   sustained actual injury in 2008, the tolling provision of § 340.6(a)(1) does not apply.

17         To the extent Krause argues that there was no actual injury prior to Krause's appointment

18   as Trustee because Krause could not personally have brought this suit for compensable damages

19   against the Book Defendants prior to his appointment as Trustee of the Bypass Trust, Krause is

20   incorrect.  The relevant question is not whether Harry Krause personally suffered actual injury

21   because Harry Krause as an individual is not the plaintiff in this case.  Rather, Harry Krause brings

22   suit as Trustee on behalf of the Bypass Trust, and the Bypass Trust itself is the named plaintiff in

23   the case.  *See* Compl.  Thus, the relevant injury is injury to the Bypass Trust, and the Bypass Trust

24   suffered actual injury in 2008.

25         As to Krause's argument that Krause could not bring this lawsuit prior to becoming

26   Trustee, that argument is identical to Krause's argument that he was under a legal disability prior

27   to his appointment as Trustee.  The Court now turns to whether Krause is entitled to tolling

28
                                                    17
     Case No. 15-CV-02280-LHK
     ORDER GRANTING MOTION TO DISMISS

1   because of a legal disability.

2          **b.  Legal Disability**

3          California Code of Civil Procedure § 340.6(a)(4) tolls the statute of limitations during the

4   time that "[t]he plaintiff is under a legal or physical disability which restricts the plaintiff's ability

5   to commence legal action."  As previously discussed, the plaintiff in this case is not Krause in his

6   individual capacity but The Richard Musgrave Bypass Trust.  Krause advances no arguments for

7   why the Bypass Trust was under a legal disability prior to Krause's appointment as Trustee, *see*

8   ECF No. 30 at 13-15, so the Bypass Trust is not entitled to tolling under § 340.6(a)(4).

9          Nonetheless, Krause argues that he was under a legal disability prior to becoming Trustee

10  of the Bypass Trust in 2014 because, according to Krause, he could not file a lawsuit against the

11  Book Defendants on behalf of the Bypass Trust in his capacity as a mere contingent beneficiary.

12  ECF No. 30 at 13-15.  As discussed above, Krause did not file this lawsuit in his capacity as a

13  mere contingent beneficiary.  Moreover, even if Krause had done so, Krause's argument is based

14  on a misunderstanding of California trust law.

15         California permits contingent beneficiaries of irrevocable trusts to bring suit on behalf of

16  the trust.  *Estate of Giraldin v. Giraldin ("In re Estate of Giraldin")*, 55 Cal. 4th 1058, 1069

17  (2012).  Specifically, the California Supreme Court has held that "a contingent beneficiary may

18  petition the court subject only to the limitations provided in section 15800," and "[n]othing in

19  section 15800 limits the ability of beneficiaries to petition the court *after* the trust becomes

20  irrevocable."  *Id.*; *see also* Cal. Prob. Code § 15800(a) (the person holding the power to revoke,

21  not the beneficiary, has the rights afforded beneficiaries so long as the trust is revocable).  The

22  Bypass Trust in this case was irrevocable since its funding in 2008, so Krause could have sued on

23  behalf of the Bypass Trust in his capacity as a contingent beneficiary and sought damages from the

24  Book Defendants as early as 2008.  *See* Cal. Prob. Code § 17200 ("[A] trustee or beneficiary of a

25  trust may petition the court" in order to, *inter alia*, "(12) [c]ompel[] redress of a breach of the trust

26  by any available remedy.").

27         Indeed, California courts have repeatedly recognized that where, as Plaintiff alleges

28                                                      18

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

occurred here, an attorney participates in a trustee's breach of fiduciary duty or breach of trust, the trust beneficiaries may bring suit against the attorney.  *See Stueve Bros. Farms, LLC v. Berger Kahn*, 222 Cal. App. 4th 303, 325-26 (2013) (attorney may be held liable by trust beneficiaries for participating in conspiracy to commit fraud, aiding and abetting fraud, and participating in breaches of fiduciary duty and trust); *Wolf v. Mitchell, Silberberg & Knupp*, 76 Cal. App. 4th 1030 (1999) (attorney liable for participation in breach of trust); *Pierce v. Lyman*, 1 Cal. App. 4th 1093 (1991) (attorney liable for participation in trustees' breach of fiduciary duty), *superseded by statute on other grounds as stated in Pavicich v. Santucci*, 85 Cal. App. 4th 382, 396 (2000). California courts have also held that a trust's intended beneficiaries may bring claims for legal malpractice against the trust's attorney.  *See Osornio v. Weingarten*, 124 Cal. App. 4th 304, 338 (2004) (concluding that beneficiaries of decedent's will could amend their complaint to assert a cause of action for malpractice against decedent's attorney because attorney could be held liable for malpractice to the beneficiaries); *Lombardo v. Huysentruyt*, 91 Cal. App. 4th 656 (2001) (holding that there were triable issues of fact in a legal malpractice case brought by individuals named as beneficiaries of an attempted amendment to a trust).

Therefore, contrary to Krause's assertion, Krause could have filed suit on behalf of the Bypass Trust for damage caused to the Bypass Trust in his capacity as a contingent beneficiary. Krause is not entitled to tolling under California Code of Civil Procedure § 340.6(a)(4).

### c.  Willful Concealment

California Code of Civil Procedure § 340.6(a)(3) tolls the statute of limitations during the time that "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney."

The Complaint itself never says that the Book Defendants willfully concealed the facts constituting their wrongful acts or omissions.  Instead, Krause argues that he is entitled to tolling for willful concealment because the Book Defendants failed to file Richard Musgrave's will in probate, failed to inform the charitable beneficiaries that they were beneficiaries of the Bypass Trust, and failed to respond promptly to requests for information from Krause.  ECF No. 30 at 18-

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

19.  Krause concedes in opposition to the motion to dismiss that "Mr. Book's general and longstanding non-responsiveness could be attributed to disorganization or obstinacy" but nevertheless maintains that "the most obvious inference is that of willful concealment."  *Id.* at 19.

In order to meet the pleading standard of Federal Rule of Civil Procedure 12(b)(6), the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  The Court concludes that the factual allegations in the Complaint do not support a finding of willful concealment.

As an initial matter, in order for the Book Defendants' conduct to toll the statute of limitations, the willful concealment must occur during the limitations period.  *See* Cal. Code Civ. Proc. § 340.6(a) ("[T]he period shall be tolled during the time that any of the following exist: . . . (3) The attorney willfully conceals the facts constituting the wrongful act or omission.").  The only conduct Krause points to that occurred prior to the expiration of the limitations period in December 2009 is the failure to file Richard Musgrave's will, the failure to inform the charitable beneficiaries that they were beneficiaries, a less than two month delay in responding to a letter in 2007, and a two month delay in responding to a letter in 2009.  *See* ECF No. 30 at 18-19.  The remaining conduct—failing to respond to allegations of misconduct in the September 20, 2014 memo; refusing to talk to Thomas or Harry Krause personally after the September 20, 2014 memo; and failing to respond to requests for documents and interviews in January and February 2015—all occurred after December 2013, when the statute of limitations for Counts 2, 14, 16, and 17 expired.  *See id.*

None of the conduct that occurred during the limitations period constitutes willful concealment of the wrongful acts or omissions at issue in this case.  The first conduct Krause argues shows willful concealment, failing to file Richard Musgrave's will in probate, is the wrongful act at issue in Count 17.  *See* Compl. ¶¶ 261-65.  Although failing to file the will was itself a wrongful act, Krause does not allege or argue what wrongful act or omission the Book Defendants *concealed* by failing to file Richard Musgrave's will in probate.  Similarly, Krause does not identify what information related to Book's alleged wrongdoing Krause would have

20

1    obtained had the will been filed with probate that Krause did not obtain when he received a copy

2    of the 2002 Declaration of Trust from the Book Defendants in 2007.  *See* ECF No. 71.  Richard

3    Musgrave's will stated that:

> I [Richard Musgrave] give all my interest in the residue of my estate, including all
> my intangible property and tangible personal property and my interest in my
> residences, to the Trustees of the Trust, to be held in trust.  All property passing to
> the Trustees of the Trust shall immediately be added to and merged with and into
> the Trust to the same effect as if the property were an asset of the Trust at my
> death.  All property added to the Trust shall be held, administered, allocated, and
> distributed according to its terms, including any amendments made to the Trust
> during my lifetime.

Compl. ¶ 89.  The will is in large part duplicative of the Comprehensive Transfer Document

executed as part of the 2002 Declaration of Trust, in which Richard Musgrave transferred "any

and all properties of all kinds, whether presently owned or hereafter acquired (regardless of the

names by which acquired)," except for certain tax-favored assets, to the Richard and Peggy

Musgrave Revocable Trust.  *Id.* ¶ 52.  Finally, Krause does not allege or argue that the Book

Defendants concealed the existence of Richard Musgrave's will.  Indeed, when Krause asked

Book for a copy of Richard Musgrave's will, Book responded by sending the will to Krause less

than a month later.  Compl. ¶¶ 147, 155.

    Krause's next argument for an act of willful concealment is the Book Defendants' failure

to inform the charitable beneficiaries of their status as beneficiaries.  However, Krause alleges that

Book sent Krause a copy of the trust documents for the Richard and Peggy Musgrave Revocable

Trust in 2007.  Compl. ¶ 71.  Those trust documents lay out the terms of the Bypass Trust and

identify the charitable beneficiaries of the Bypass Trust, so the Book Defendants did not conceal

the existence of the charitable beneficiaries.  *See* Compl. Ex. 1.

    The remaining pre-2013 conduct by the Book Defendants pertains to two delays in

providing information, each of approximately two months in length.  In 2007, the Book

Defendants allegedly delayed a month and a half in responding to Krause's request for information

about Richard Musgrave's estate.  Compl. ¶¶ 69-71.  Krause alleges, however, that the Book

Defendants responded to this request for information by sending Krause the 2002 Declaration of

21

United States District Court
Northern District of California

Trust, which explained how the assets in the Richard and Peggy Musgrave Revocable Trust would be divided upon the death of either Richard or Peggy Musgrave.  *See* Compl. ¶ 71, Ex. 1.  Krause alleges that the Book Defendants also sent Krause the Third Amendment to the Declaration of Trust, which listed the beneficiaries of the Bypass Trust at the time of Richard Musgrave's death.  *Id.*  Notably, this exchange occurred in June and July of 2007, more than seven months prior to the alleged wrongful distribution of assets to the Bypass Trust in March 2008.  *See* Compl. ¶ 75 (Bypass Trust funded in March 2008).  Krause does not explain how the Book Defendants could have willfully concealed in June and July of 2007 wrongful acts or omissions that would not occur until March 2008.  Moreover, these allegations show the Book Defendants responding to Krause's requests for information.  Krause does not explain how the Book Defendants concealed any wrongdoing by complying with Krause's request for information less than two months after Krause requested the information.

Finally, Krause alleges that on January 29, 2009, Krause wrote to Book to explain Krause's belief that Peggy Musgrave was taking improper income from the Bypass Trust.  Compl. ¶ 105.  Krause alleges that Book did not respond until April 3, 2009, at which time Book *agreed* with Krause that Peggy Musgrave was taking improper income from the Bypass Trust.  *Id.* ¶ 107.  Krause does not explain how Book concealed any wrongdoing by responding to Krause's inquiry and agreeing with Krause that the funds in the Bypass Trust were being misused.

Because Krause has not alleged any acts of willful concealment by the Book Defendants, Krause is not entitled to tolling under § 340.6(a)(3).

### d.  Conclusion

Because Krause has not alleged facts to support the application of any of the tolling provisions of section 340.6(a), the statute of limitations on Counts 2, 14, 16, and 17 as to the Book Defendants expired no later than December 2013—four years after the Book Defendants ceased legal representation of Peggy Musgrave and the Bypass Trust.  Krause's complaint, filed on May 20, 2015, was untimely as to the Book Defendants on Counts 2, 14, 16, and 17.

Therefore, the Court GRANTS the Book Defendants' motion to dismiss Counts 2, 14, 16,

22

1  and 17 as to the Book Defendants.  This dismissal is without prejudice because the Court

2  concludes that amendment would not necessarily be futile, as Krause may be able to allege

3  sufficient facts to support his claim of tolling for willful concealment under § 340.6(a)(3).  *See*

4  *Leadsinger*, 512 F.3d at 532.

5  **B. Count 15**

6      Book moves to dismiss Count 15, a claim for aiding and abetting Pamela Clyne's breaches

7  of fiduciary duty and failure to stop Peggy Musgrave's breach of trust brought solely against

8  Defendant Book, on the grounds that Krause has not pled all of the necessary elements of the

9  claim.  ECF No. 16 at 8-9.

10      The elements of a claim for aiding and abetting a breach of fiduciary duty in California are:

11  (1) "a third party's breach of fiduciary duties owed to plaintiff;" (2) "defendant's actual

12  knowledge of that breach of fiduciary duties;" (3) "substantial assistance or encouragement by

13  defendant to the third party's breach;" and (4) "defendant's conduct was a substantial factor in

14  causing harm to plaintiff."  *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).

15  Book argues in his motion to dismiss that Krause has not alleged that Book had actual knowledge

16  of Pamela Clyne's breach of fiduciary duties or that Book provided substantial assistance or

17  encouragement to Pamela Clyne's breach.  ECF No. 16 at 9.  In his reply brief, Book further

18  argues that Krause has failed to allege that Book's conduct was a substantial factor in causing

19  harm to Krause.  ECF No. 33 at 10.

20      The Court addresses each of the elements of aiding and abetting in turn.

21  **1. Element One: Breach of Fiduciary Duty by a Third Party**

22      Book does not dispute that the Complaint alleges a breach of fiduciary duty by Pamela

23  Clyne.  ECF No. 16 at 9; ECF No. 33 at 10.  According to the Complaint, Pamela Clyne breached

24  her fiduciary duty to the Bypass Trust by withholding documents from Peggy Musgrave's files

25  relating to the Bypass Trust and by providing "false and/or misleading information" to Book.

26  Compl ¶¶ 232-38.  The Complaint alleges that the document requests to which Pamela Clyne

27  failed to respond were directed to Peggy Musgrave and sought documents in Peggy Musgrave's

United States District Court
Northern District of California

28

23

1   possession.  *Id.* ¶¶ 139, 142, 232-38.  The Complaint further alleges that Pamela Clyne failed "to

2   stop Peggy Musgrave's breach of trust."  Compl. ¶ 254.

3         **2.   Element Two: Defendant's Actual Knowledge of the Third Party's Breach**

4         As to Book's knowledge of Pamela Clyne's breach of fiduciary duty, Krause argues that

5   this element is satisfied because Book was aware of the 2008 breach of trust allegedly committed

6   by the Book Defendants and Peggy Musgrave and because Book knew that Pamela Clyne owed a

7   fiduciary duty to Krause.  ECF No. 30 at 20.  Krause states that based on these two allegations, "it

8   is reasonable to assume that [Book], as an estate planning attorney, understood that Ms. Clyne had

9   a duty to rectify Ms. Musgrave's breaches of fiduciary duty and trust."  *Id.*  Krause further points

10  to the allegation that Pamela Clyne called Book sometime around October 2014.  *Id.*; Compl.

11  ¶ 144.  Krause argues that in this phone call, Book "presumably learned that Ms. Clyne was not

12  inclined to rectify her mother's breaches."  ECF No. 30 at 20.  Krause further argues that Book

13  obtained knowledge of Pamela Clyne's breach of fiduciary duty through Krause's November 10,

14  2014 letter to Book, Book's interview with Krause's then-attorney, and Krause's subsequent

15  efforts to communicate with Book.  *Id.*

16        The allegations regarding the phone call between Pamela Clyne and Book are insufficient

17  to establish Book's knowledge of Pamela Clyne's breach of fiduciary duties.  The entirety of

18  Krause's allegations regarding this phone call are that "[d]espite Thomas's request that the parties

19  jointly contact Dennis Book, Pamela Clyne contacted Mr. Book unilaterally.  On information and

20  belief, Pamela Clyne gave Dennis Book false and/or misleading information about Richard's heirs

21  and beneficiaries."  Compl. ¶ 144.  Krause does not allege that Pamela Clyne told Book about

22  Krause's requests for information, nor does Krause allege that Pamela Clyne told Book that

23  Pamela Clyne and Peggy Musgrave would not comply with Krause's requests.

24        Similarly, Krause's November 10, 2014 letter to Book, Book's interview with Krause's

25  then-attorney, and Krause's subsequent efforts to contact Book are insufficient to establish Book's

26  knowledge of Pamela Clyne's breach of fiduciary duty.  Krause's November 10 letter to Book,

27  which requested a copy of Richard Musgrave's will from Book and included a copy of the

28

24

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

September 20, 2014 memo describing the alleged breaches of fiduciary duty by Peggy Musgrave, alerted Book only to Peggy Musgrave's alleged continuing breach of fiduciary duty.  Compl. ¶ 147.  The September 20 memo attached to the letter indicated that Krause had requested documents from Peggy Musgrave, including a copy of Richard Musgrave's will.  *Id.*  The September 20 memo further detailed the alleged breaches of fiduciary duty and trust committed by Peggy Musgrave.  *Id.*; Compl. Ex. 2 (the September 20 memo).  However, the September 20 memo does not mention any conduct by Pamela Clyne nor any efforts by Krause to obtain documents from Pamela Clyne.  *See* Compl. Ex. 2.  The Complaint does not allege that Krause's November 10 letter to Book made any mention of Pamela Clyne.  Compl. ¶ 147.  The Complaint also does not allege that Pamela Clyne was discussed or mentioned at Book's interview or in any of Krause's later emails or phone calls to Book.  Compl. ¶¶ 144; 151; 155; 172.

In short, the Complaint does not contain any factual allegations indicating that Book was informed of Pamela Clyne's alleged breach of fiduciary duty.  *See Iqbal*, 556 U.S. at 678 (Federal Rule of Civil Procedure 12(b)(6) requires a plaintiff to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").  Krause thus has not adequately pled the second element of aiding and abetting.

### 3.   Element Three: Substantial Assistance or Encouragement by the Defendant to the Third Party's Breach

Krause argues that Book's failure to cooperate with Krause's requests for information constitutes substantial assistance or encouragement to Pamela Clyne's breach.  Specifically, Krause alleges that Book failed to respond to unspecified emails and that Book only consented to a single interview with Krause's then-attorney.  Compl. ¶ 144.  According to Krause, "[i]t is also reasonable to infer that Mr. Book's subsequent failure to respond to Harry and Thomas's subsequent requests for information . . . were a result of whatever was communicated" in the phone call between Pamela Clyne and Book in approximately October 2014.  ECF No. 30 at 21.

However, by the time of Krause's November 10, 2014 letter that alerted Book to Pamela Clyne's breach of fiduciary duties, Minda Parrish had already provided Krause with files

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

containing many of the documents requested by Krause.  Compl. ¶ 147.  In Krause's November 10 letter, Krause asked Book for only one of the eleven documents originally requested from Peggy Musgrave and Pamela Clyne—a copy of Richard Musgrave's will.  *Id.*  Book complied with Krause's request and sent Krause a copy of Richard Musgrave's will on December 8, 2014—less than a month after Krause's request.  *Id.* ¶ 155.  Although Book did not provide a written response to the September 20 memo, Book did agree to an interview regarding the events described in the memo, and that interview took place on January 27, 2015.  *Id.* ¶¶ 155, 172.  In that interview, Book agreed with Krause's position as to the Riversource insurance proceeds and concurred at least in part with Krause's arguments as to Peggy Musgrave's accounting for personalty and the $220,000 in distributions made upon Richard Musgrave's death.  *Id.* ¶ 172.

These allegations show that Book attempted to rectify the failure to produce documents to Krause, that Book was willing to meet with Krause's attorney, and that Book acknowledged errors in distributing funds to the Bypass Trust.  These actions all occurred within three months of Book's receipt of Krause's November 10 letter.  Rather than showing aiding and abetting of Pamela Clyne's breach of fiduciary duties, the allegations in the Complaint show efforts by Krause to timely mitigate any breach of fiduciary duties.

Therefore, Krause also has not adequately alleged the third element of aiding and abetting a breach of fiduciary duty.

### 4. Element Four: Defendant's Conduct Was a Substantial Factor in Causing Harm to the Plaintiff

Book did not challenge the fourth element of aiding and abetting in his motion to dismiss, raising it for the first time on reply.  *See* ECF No. 16 at 9; ECF No. 33 at 10.  Correspondingly, Krause did not address causation in his opposition brief.  *See* ECF No. 30.  The Court need not address causation because the Court has already concluded that Krause has failed to adequately allege the second and third elements of aiding and abetting.  Moreover, "[t]he district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

Case No. 15-CV-02280-LHK
ORDER GRANTING MOTION TO DISMISS

However, the Court notes that it is skeptical that Krause has adequately alleged that Book's conduct in allegedly aiding and abetting Pamela Clyne's breach of fiduciary duty was a substantial factor in causing harm to Krause.  The Complaint alleges that Book complied with Krause's request for a copy of Richard Musgrave's will, that Book complied with Krause's request for an interview, and that Book agreed with Krause as to some of the alleged misconduct.  Compl. ¶¶ 155, 172.  Krause does not allege or explain how Book's "great reluctance to cooperate" with Krause in 2014 and 2015 caused harm to Krause in light of the fact that Book ultimately *did* cooperate with Krause's request for documents and an interview.  *Id.* ¶¶ 144, 155, 172.

The Court therefore GRANTS Book's motion to dismiss Count 15.  This dismissal is without prejudice because the Court concludes that amendment would not necessarily be futile, as Krause may be able to allege sufficient facts to support his claim for aiding and abetting.  *See Leadsinger*, 512 F.3d at 532.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Book Defendants' motion to dismiss Counts 2, 14, 15, 16, and 17 as to the Book Defendants.  Should Krause elect to file an Amended Complaint curing the deficiencies identified herein, Krause shall do so within 30 days of the date of this Order.  Failure to meet the 30-day deadline to file an Amended Complaint or failure to cure the deficiencies identified in this Order will result in a dismissal of Counts 2, 14, 15, 16, and 17 as to the Book Defendants with prejudice.  Krause may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: November 10, 2015

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California